FILED
United States Court of Appeals
Tenth Circuit

**January 27, 2015**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KATHY A. RISER, an individual,

    Plaintiff - Appellant,

v.

QEP ENERGY, a Texas corporation,

    Defendant - Appellee.

No. 14-4025

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:12-CV-00133-DAK)**

Austin B. Egan (Andrew W. Stavros of Stavros Law P.C., on the briefs), Draper, Utah, for Plaintiff - Appellant.

Richard M. Hymas, (David Arrington and Melinda L. Hill of Durham, Jones & Pinegar, on the brief), Salt Lake City, Utah, for Defendant - Appellee.

Before **KELLY**, **LUCERO**, and **HARTZ**, Circuit Judges.

**KELLY**, Circuit Judge.

    Plaintiff-Appellant Kathy Riser brought suit in federal district court in Utah alleging that Defendant-Appellee QEP Energy Company (QEP) discriminated against her on the basis of gender and age in violation of the Equal Pay Act

(EPA), Title VII of the Civil Rights Act of 1964 (Title VII), and the Age

Discrimination in Employment Act (ADEA). The district court granted summary

judgment to QEP on all claims. Riser v. QEP Energy Co., No. 2:12CV133DAK,

2014 WL 257434 (D. Utah Jan. 23, 2014). We have jurisdiction pursuant to 28

U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

Background

Ms. Riser, a fifty year old woman,[1] began working at Questar Exploration

and Production Company (Questar) in 1997 and was promoted to the position of

Administrative Services Representative II in 2003. Her listed job responsibilities

included managing a fleet of over 250 vehicles and performing various facilities-

management duties. She subsequently took on several additional duties, including

managing construction projects in several states. During this time, Ms. Riser was

the only Questar employee performing fleet management and facilities

management duties.

On July 1, 2010, QEP was spun off from Questar and became its own

independent company. At QEP, Ms. Riser continued to perform the same duties

that she had been performing since 2003. In September 2010, Tyler Bench

became Ms. Riser's direct supervisor.

_____

[1] The ages referenced for Ms. Riser, Mr. Chinn, and Mr. Bryant are their ages at the time of their respective depositions or affidavits in 2013.

When Ms. Riser began working at QEP, she was paid $22.11 per hour. In March 2011, this was increased to $22.78, or $47,382 annualized. Shortly after QEP was spun-off, it developed a pay classification system for employees based on industry compensation data. The system consisted of 15 different grades, and Ms. Riser's position was designated as a Grade 5. This classification was based on QEP's knowledge of the tasks that administrative assistants typically perform; Ms. Riser's actual job responsibilities were not considered. Aplt. App. 129. Twice Ms. Riser asked Mr. Bench to change her title and salary, but she received no response.

Mr. Bench and his boss, Tom McKendrick, stated they received several complaints from QEP management about Ms. Riser's unsatisfactory performance on a project in North Dakota and her general nonresponsiveness. Nevertheless, Mr. Bench's evaluation of Ms. Riser for the year 2010 stated that she met or exceeded expectations in all regards. Id. at 308–13. During the duration of Ms. Riser's employment with QEP, she never received a verbal reprimand, written warning, suspension, probation, or any other form of discipline.

In May 2011, QEP created a new position titled "Fleet Administrator," in part because Ms. Riser had logged 541 hours of overtime in the prior fourteen months performing both fleet administration and facilities management duties. Ms. Riser provided a description of her fleet administration responsibilities, which was used to establish a description of the new position. QEP classified the

position as a Grade 7, with a recommended annual salary of $62,000.

In June 2011, QEP hired Matthew Chinn, a thirty-nine year old male, as Fleet Administrator and paid him $29.81 per hour, or $62,000 annualized. Ms. Riser trained Mr. Chinn for the job until her termination in September 2011. QEP asserts that Mr. Chinn took over Ms. Riser's fleet management duties along with other duties, including coordinating vehicle maintenance on a centralized basis, generating vehicle reports for employees in the field, and implementing a new natural gas vehicle program. However, Ms. Riser stated she was in the process of implementing these programs at the time Mr. Chinn was hired. Mr. Bench stated that any changes to the fleet administration position dealt with *how* the job was performed; the core functions of the position remained intact. Id. at 291.

After Mr. Chinn was hired, Ms. Riser's job focused on managing QEP's facilities and construction projects at field offices. Mr. Bench and Mr. McKendrick stated they continued to receive complaints about Ms. Riser's work on the North Dakota construction project, which was behind schedule. None of these complaints were conveyed to Ms. Riser. And, QEP's legal counsel submitted multiple certified letters to the North Dakota contractor expressly blaming him for delays to the project.

In August 2011, QEP began discussing a new "Facilities Manager" position and spoke with Jason Bryant, a thirty year old male, about the position. Mr. Bryant previously had been working as the project manager for a company that

- 4 -

was remodeling QEP's Denver offices.

On September 8, 2011, QEP terminated Ms. Riser. QEP stated that Ms. Riser was terminated because of her unsatisfactory performance on the North Dakota project. QEP did not give Ms. Riser any warning or place her on suspension or probation prior to termination. Though QEP's employee handbook makes clear that such measures are not necessary, it sensibly advises management to inform employees of conduct that needs improvement and then, if unsuccessful, to "use other discipline methods" such as a written reprimand, suspension, or probation. Id. at 583. QEP used none of these methods prior to firing Ms. Riser.

Shortly thereafter, QEP hired Mr. Bryant as Facilities Manager, which QEP classified as a Grade 7 position. Mr. Bryant accepted QEP's offer of $66,000 per year after previously declining its offer of $62,500. Mr. Bryant's primary duties were: (1) managing construction projects, including at the Denver corporate office; (2) managing the Denver facility; (3) maintenance and security at field offices; and (4) supervising employees at QEP's Denver office.

Ms. Riser brought suit against QEP in federal district court in Utah alleging: (1) pay discrimination under the EPA, Title VII, and ADEA; (2) failure to promote under Title VII and the ADEA; and (3) discriminatory discharge under Title VII and the ADEA. The district court granted summary judgment to QEP on all claims. Riser, 2014 WL 257434. Ms. Riser appeals the district court's grant of summary judgment on all but her failure to promote claim.

Discussion

We review the district court's grant of summary judgment de novo, applying the same standard used by the district court. McBride v. Peak Wellness Ctr., Inc., 688 F.3d 698, 703 (10th Cir. 2012). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If "a reasonable jury could return a verdict for the nonmoving party," summary judgment is inappropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reviewing a grant of summary judgment, we "view[] all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party." Croy v. Cobe Labs., Inc., 345 F.3d 1199, 1201 (10th Cir. 2003).

A.    Equal Pay Act

The EPA prohibits wage discrimination "between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). The district court held that Ms. Riser's EPA claim failed on two grounds. First, Ms. Riser could not establish a prima facie case of pay discrimination because she did not establish that her job was "substantially equal" to either Mr. Chinn or Mr. Bryant's job. Second, even if Ms. Riser could establish a prima facie case of pay discrimination, her claim

- 6 -

would fail because the wage disparity was the product of QEP's gender-neutral pay classification system, a factor other than sex.  We disagree on both grounds.

   1.   Prima Facie Case

To establish a prima facie case of pay discrimination under the EPA, a plaintiff must demonstrate that: "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances."  Sprague v. Thorn Ams., Inc., 129 F.3d 1355, 1364 (10th Cir. 1997) (citation omitted).  QEP does not dispute that the conditions of Ms. Riser's employment were basically the same as Mr. Chinn or Mr. Bryant's or that Ms. Riser was paid less; it simply argues that Ms. Riser's job was not "substantially equal" to the jobs of Mr. Chinn or Mr. Bryant.

Work is "substantially equal" for purposes of the EPA if it requires "equal skill, effort, and responsibility."  29 U.S.C. § 206(d)(1).  This determination turns on the actual content of the job—not mere job descriptions or titles.  EEOC v. Cent. Kan. Med. Ctr., 705 F.2d 1270, 1273 (10th Cir. 1983), overruled on other grounds by McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 n.10 (1988).  "What constitutes equal skill, equal effort, or equal responsibility cannot be precisely defined," but must take into consideration "the broad remedial purpose of the law."  29 C.F.R. § 1620.14.  Thus, "[i]nsubstantial or minor differences in

the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable." Id. That said, we have consistently held that jobs that are merely alike or comparable are not "substantially equal" for purposes of the EPA. Sprague, 129 F.3d at 1364; see also Nulf v. Int'l Paper Co., 656 F.2d 553, 560 (10th Cir. 1981).

Genuine disputes of material fact exist as to whether Ms. Riser's work was "substantially equal" to Mr. Chinn's. First, Mr. Chinn's fleet administration duties were carved directly out of Ms. Riser's duties. Ms. Riser performed all of the fleet administration duties for QEP, then Mr. Chinn was hired and took on these responsibilities. Ms. Riser even discussed her fleet administration responsibilities with Mr. Bench to prepare Mr. Chinn's job description and trained him to perform these duties until her termination. As Mr. Bench explained, there were no tasks on Mr. Chinn's job description that Ms. Riser was not previously responsible for performing; the core functions of the fleet administration job remained the same. Aplt. App. 291.

The district court found that Mr. Chinn performed two duties beyond Ms. Riser's: he "developed a natural gas vehicle program" and "centralized the maintenance functions of the fleets." Riser, 2014 WL 257434, at *2. But, Ms. Riser stated she had begun implementing these programs prior to Mr. Chinn's hiring. Whether Ms. Riser was performing these duties is precisely the type of factual dispute that renders summary judgment inappropriate.

QEP contends that the jobs were not substantially equal because Mr. Chinn spent 100% of his time performing fleet administration duties, whereas Ms. Riser spent roughly 33% of her time on such duties and the remaining 67% of her time performing facilities-management duties. Aplee. Br. 22–23. But, the fact that a female employee performed additional duties beyond a male comparator does not defeat the employee's prima facie case under the EPA. See 29 C.F.R. § 1620.14(a) ("[D]ifferences in skill, effort or responsibility . . . do not justify [a finding that two jobs are not equal under the EPA] where the greater skill, effort, or responsibility is required of the lower paid sex."); Beck-Wilson v. Principi, 441 F.3d 353, 360 (6th Cir. 2006).

Nevertheless, QEP relies on several cases for the proposition that employees do not perform equal work for purposes of the EPA where "significant amounts of time are spent on different tasks." Aplee. Br. 23–24 (citing Nulf, 656 F.2d at 560–61 (secretary-receptionist who performed some work of order-desk employees did not perform substantially equal work to order-desk employees); Gunther v. Cnty. of Wash., 623 F.2d 1303, 1309–10 (9th Cir. 1979) (female prison guards who spent half of time guarding prisoners and half performing clerical duties not substantially equal to male prison guards who spent most of time guarding prisoners); Katz v. Sch. Dist. of Clayton, Mo., 557 F.2d 153, 156 (8th Cir. 1977) (teacher's assistant who did not spend majority of time teaching did not perform substantially equal work to full-time teachers)). But the nature of

the jobs at issue in these cases was such that, where male comparators spent more time performing the relevant tasks, that necessarily entailed more responsibilities. Not so here, where Ms. Riser performed the entirety of fleet-administration tasks that were eventually passed to Mr. Chinn. QEP has not presented evidence that the additional time Mr. Chinn spent on fleet administration necessarily meant he performed more work. Although Ms. Riser only spent 33% of her time performing fleet administration duties, a reasonable trier of fact might conclude that she was simply more efficient than Mr. Chinn at managing QEP's fleet. That is a question for the trier of fact.

Genuine disputes of fact also exist as to whether Ms. Riser's job was substantially equal to Mr. Bryant's. The parties agree that Mr. Bryant, like Ms. Riser, managed construction projects at QEP's field offices. Mr. Bryant took over management of the construction projects in North Dakota and Pinedale, Wyoming that Ms. Riser had been managing at the time of her termination. Further, Mr. Bench testified that prior to Ms. Riser's termination, she performed *all* of the listed responsibilities QEP assigned to the facilities manager position. Nevertheless, QEP contends Mr. Bryant had four additional responsibilities.

First, QEP asserts that Mr. Bryant's direct supervision of an employee at the Denver office was a significant difference between his duties and Ms. Riser's. Aplee. Br. 27. But this duty consumed under 5% of Mr. Bryant's time, and he did not have the authority to fire or change the employee's compensation without Mr.

- 10 -

Bench's approval. Further, QEP neglected to even list this responsibility amongst the Facilities Manager's duties. And, although Ms. Riser had no direct reports, she did have supervisory responsibility over employees at QEP field offices.

Second, QEP asserts that Mr. Bryant's management of construction projects at QEP's Denver office rendered his job unequal to Ms. Riser's. Aplee. Br. 28. But Mr. Bryant himself testified that the Denver remodeling project began in November 2011—two months after QEP terminated Ms. Riser. The fact that Mr. Bryant worked on a construction project—one similar in nature to those Ms. Riser had previously managed—that began after Ms. Riser's tenure with QEP ended does not show their respective positions were different.

Third, QEP points towards Mr. Bryant's facilities management of the Denver office. Aplee. Br. 29. But Ms. Riser performed similar tasks for the Salt Lake City office, and QEP cites no evidence showing that these tasks required different amounts of skill, knowledge, or responsibility.

Finally, QEP argues that Mr. Bryant performed security and maintenance duties at field offices. Aplee. Br. 29–30. But Mr. Bryant stated that his involvement in facilities management of QEP field offices was "[s]lim to none." Aplt. App. 539. As this court has held, job differences that are "not significant in amount or degree will not support a wage differential." Brennan v. S. Davis Comm. Hosp., 538 F.2d 859, 862 (10th Cir. 1976). We think a reasonable jury could find the skill, effort, and responsibility required to perform Ms. Riser's job

was "substantially equal" to that required to perform Mr. Bryant's.

Finally, we note that QEP's argument that Ms. Riser has no comparator appears especially disingenuous. QEP essentially bifurcated Ms. Riser's position, assigning the tasks she was performing to the two positions of Fleet Administrator and Facilities Manager, which were then filled by male employees compensated at significantly higher rates.

### 2. QEP's Affirmative Defense

Once a plaintiff has established a prima facie case of discrimination under the EPA, the defendant must show the pay disparity was justified by one of four permissible reasons: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1); see also Cnty. of Wash. v. Gunther, 452 U.S. 161, 168 (1981) (describing these as the EPA's "four affirmative defenses"). To meet this burden, an employer must "submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity." Mickelson v. N.Y. Life Ins. Co., 460 F.3d 1304, 1312 (10th Cir. 2006) (citation omitted). At the summary judgment stage, this means an employer must "prove at least one affirmative defense so clearly that no rational jury could find to the contrary." Id. at 1311 (citation omitted).

A bona-fide, gender-neutral pay classification system constitutes a "factor other than sex" under the EPA. Washington Cnty., 452 U.S. at 171 (courts cannot substitute their judgment for that of an employer with a "bona fide job rating system" (citation omitted)); Corning Glass Works v. Brennan, 417 U.S. 188, 201 (1974). However, such a classification system serves as a defense only where any resulting difference in pay is "rooted in legitimate business-related differences in work responsibilities and qualifications for the particular positions at issue." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 525 (2d Cir. 1992); see also Brownlee v. Gay & Taylor, Inc., 642 F. Supp. 347, 353 (D. Kan. 1985) (mere presentation of a formal salary classification system does not foreclose EPA claim).

QEP paid Ms. Riser $47,382 annually, Mr. Chinn $62,000 annually (31% more than Ms. Riser), and Mr. Bryant $66,000 annually (39% more than Ms. Riser). QEP argues the pay differential between Ms. Riser and Mr. Chinn was based on QEP's bona-fide, gender-neutral pay classification system that was based on compensation data in the industry. Aplee. Br. at 32–33. Further, QEP maintains the pay differential with respect to Mr. Chinn is explained in part by QEP's desire to pay him the same amount he received at his prior job. Similarly, it argues Mr. Bryant's elevated salary was due to his initial rejection of QEP's offer of $62,500. QEP asserts that these facts conclusively establish that any difference in pay was based on a "factor other than sex." We disagree.

- 13 -

QEP's compensation system classified Ms. Riser's position as a Grade 5, Mr. Chinn's as a Grade 7, and Mr. Bryant's as a Grade 7. But, Ms. Riser's pay grade was not based on the duties she was actually performing, but on the duties administrative assistants typically perform—despite the fact Ms. Riser's supervisors knew she was not performing administrative assistant duties. Ms. Riser was never asked by anyone at QEP about the skills or qualifications needed for her position. Moreover, she twice requested for her pay grade to be re-evaluated, to no avail. Given the fact that Ms. Riser performed the bulk of the responsibilities performed by Mr. Chinn and Mr. Bryant combined, a reasonable trier of fact could certainly question how 31% and 39% pay gaps could be explained by "legitimate business-related differences in work responsibilities and qualifications for the particular positions at issue." Aldrich, 963 F.2d at 525.

QEP is correct that an individual's former salary can be considered in determining whether pay disparity is based on a factor other than sex. See Brickey v. Emp'rs Reassurance Corp., 293 F. Supp. 2d 1227, 1233 (D. Kan. 2003). However, the EPA "precludes an employer from relying solely upon a prior salary to justify pay disparity." Angove v. Williams-Sonoma, Inc., 70 F. App'x 500, 508 (10th Cir. 2003) (unpublished). The 31% disparity between Ms. Riser and Mr. Chinn's pay cannot be justified simply by Mr. Chinn's prior salary.

Likewise, a company's decision to pay an elevated salary to an applicant after he rejected a lower offer can constitute a factor other than sex. See Clayton

v. Vanguard Car Rental U.S.A., Inc., 761 F. Supp. 2d 1210, 1273–74 (D.N.M. 2010).  But this, at most, accounts for $3500 per year of the pay disparity between Ms. Riser and Mr. Bryant—nowhere near the full $18,618.

In short, we cannot say that QEP has "prove[n] at least one affirmative defense so clearly that no rational jury could find to the contrary."  Mickelson, 460 F.3d at 1311.  Thus, we reverse the district court's grant of summary judgment to QEP on Ms. Riser's EPA claim.

B.      Title VII and ADEA Pay Discrimination

Ms. Riser also asserted a claim of pay discrimination based on gender under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and pay discrimination based on age under the ADEA, 29 U.S.C. § 623(a)(1).[2]  Under both Title VII and the ADEA, a plaintiff has the ultimate burden of proving her employer intentionally discriminated against her.  Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008).  A plaintiff can establish this by either direct evidence or circumstantial evidence that creates an inference of intentional discrimination.  Id.

Where a plaintiff seeks to use circumstantial evidence to show discriminatory intent, the burden-shifting framework of McDonnell Douglass

---

[2]  We note that, contrary to Ms. Riser's assertion that EPA violations automatically constitute Title VII violations, Aplt. Reply Br. 27, this court has held that EPA and Title VII claims have distinct elements and thus are evaluated separately.  See Sprague, 129 F.3d at 1361 n.3; Tidwell v. Fort Howard Corp., 989 F.2d 406, 409–10 (10th Cir. 1993).

- 15 -

Corp. v. Green, 411 U.S. 792 (1973) applies.  Adamson, 514 F.3d at 1145.  First a plaintiff must establish a prima facie case of pay discrimination.  If the plaintiff succeeds, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions.  If the defendant does so, the burden shifts back to the plaintiff to show that his or her protected characteristic was "a determinative factor in the defendant's employment decision" or that the defendant's explanation was merely pretextual.  Id.  The district court dismissed Ms. Riser's pay discrimination claims, finding that she failed to establish a prima facie case, and that even if she did, she failed to show that QEP's articulated reason for the pay disparity was pretextual.  Riser, 2014 WL 257434, at *4.

To establish a prima facie case of pay discrimination under Title VII, Ms. Riser must show she "occupies a job similar to that of higher paid males." Sprague, 129 F.3d at 1363 (quoting Meeks v. Computer Assocs. Intern., 15 F.3d 1013, 1019 (11th Cir. 1994)).  Under the ADEA, she must show she was paid less than similarly situated younger employees.  Almond v. Unified Sch. Dist. No. 501, 665 F.3d 1174, 1181 (10th Cir. 2011).  QEP concedes that job similarity requirements under Title VII and the ADEA are less stringent than under the EPA.  Aplee. Br. 39.  Thus, because of the substantial similarity between Ms. Riser's job and the jobs of Mr. Chinn and Mr. Bryant, discussed above, Ms. Riser has established a prima facie case of pay discrimination under Title VII and the ADEA.

- 16 -

QEP has articulated a legitimate, non-discriminatory reason for the pay disparity between Ms. Riser and Mr. Chinn and Mr. Bryant: its pay classification system. Aplee. Br. 39–40. Thus, the burden of production shifts back to Ms. Riser to show that QEP's compensation scheme was pretextual or that gender or age was a "determinative factor" in QEP's decision to pay Ms. Riser less money. This court has recognized that "[p]retext can be shown in a variety of ways," and "there is no one specific mode of evidence required to establish the discriminatory inference." Conroy v. Vilsack, 707 F.3d 1163, 1172 (10th Cir. 2013) (citation omitted). Pretext can be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (citation omitted); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

Here, a reasonable juror could conclude that inconsistencies in the application of QEP's pay classification system render its proffered reason for the pay disparity between Ms. Riser and Mr. Chinn and Mr. Bryant unworthy of

- 17 -

belief. QEP's compensation system yielded a salary for Ms. Riser that was 31% less than Mr. Chinn's and 39% less than Mr. Bryant's, despite the fact that she was performing the bulk of both of their responsibilities at the same time. Her pay grade was not based on the fleet administration or facilities management duties her supervisors knew she was performing, but instead on QEP's assessment of the work administrative assistants typically perform. And although she raised concerns with her pay grade and title to Mr. Bench on multiple occasions, these concerns were ignored. A reasonable juror could certainly conclude that such evidence renders QEP's alleged explanation for the pay disparity unworthy of credence. Thus, we reverse the district court's grant of summary judgment to QEP on Ms. Riser's Title VII and ADEA pay discrimination claims.

C.    Title VII and ADEA Discriminatory Discharge

Finally, Ms. Riser appeals the grant of summary judgment on her discriminatory discharge claims against QEP under Title VII and the ADEA. These claims, too, are governed by the McDonnell Douglass burden-shifting framework. Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005). The district court dismissed Ms. Riser's discriminatory discharge claims on the grounds that she had not established a prima facie case, and that even if she had, QEP had supplied a legitimate, non-discriminatory reason for the discharge that Mr. Riser did not show to be pretextual. Riser, 2014 WL 257434, at *5–6. In Ms. Riser's opening brief, she does not argue that she satisfied her prima facie case, but

simply asserts a prima facie case exists and proceeds to argue that QEP's reasons for discharging her were pretextual. Aplt. Br. 56 ("After the plaintiff makes a *prima facie* case (as here), the burden shifts to the employer . . . ."). As this court has held, "[i]ssues not raised in the opening brief are deemed abandoned or waived." Coleman v. B–G Maint. Mgmt. of Colo., Inc., 108 F.3d 1199, 1205 (10th Cir. 1997). Thus, Ms. Riser has waived this argument, and we affirm the district court's grant of summary judgment on her discriminatory discharge claims under Title VII and the ADEA.

AFFIRMED in part, REVERSED in part, and REMANDED.