ORDER AND JUDGMENT *
Scott M. Matheson, Jr., Circuit Judge.
The Society of Professional Engineering Employees in Aerospace, Local 2001 (“SPEEA”) sued Spirit Aerosystems (“Spirit”) to compel arbitration of a grievance. The district court granted summary judgment to Spirit, deciding an individual employee’s grievance had challenged a company-wide policy and thus was not subject to arbitration under the parties’ collective bargaining agreement (“CBA”). Exercising jurisdiction under 28 U.S.C. § 1291, we reverse.
I. BACKGROUND
A. The CBA
Article 3 of the CBA addresses grievances and arbitration. Section 3.3 outlines a four-step process. See Aplt. App. Vol. 2 at 78. At step one, an employee brings an oral complaint to an immediate supervisor. If. unresolved, at step two the employee *719 submits the complaint in writing to the supervisor, who meets with the employee and a union representative to resolve the grievance. If the employee is still unsatisfied, at step three the employee may appeal to human resources for a meeting with both a company and union representative present. If still unsatisfied, at step four the employee may seek arbitration to resolve the grievance.
Section 3.6 provides that “each grievance appealed to arbitration shall be the subject of a separate and distinct arbitration hearing and decision.” Id. at 79. Section 8.2(c) excludes from the grievance process the granting of a deviation from the general precept that “it is normally inappropriate to hire Contract personnel as direct hires during periods of surplus activity.” Aplt. App. Vol. 3 at 93. Section 15.1(d) permits both the company and union to file a grievance “alleging a violation of the no strike obligation” or “no-lockout obligation,” respectively, beginning at step three. Aplt. App. Vol. 4 at 105. Section 18.2 states that a grievance alleging discrimination is subject to the Section 3.3 process “only if it is filed on behalf of and pertains to a single employee.. Class grievances under Article 18 shall not be subject to the grievance and arbitration procedure.” Id. at 106.
B. Prior Litigation
This court previously interpreted the parties’ CBA. In 2012, SPEEA filed a grievance at step three, charging that Spirit “unilaterally calibrated the employee evaluation process in November 2011.” SPEEA v. Spirit Aerosystems, Inc. (SPEEA I), No. 12-1180-JTM, 2012 WL 5995552 at *4 (D. Kan. Nov. 30, 2012) (alterations and internal quotation marks omitted). In SPEAA /, the district court held that broad, class-wide grievances were not subject to arbitration under the CBA because the agreement limits step-three grievances between the union and company to lockout disputes, Id. at *6. This court affirmed, concluding “that the grievance process [does] not cover union disputes over employee evaluations.” SPEEA v. Spirit Aerosystems, Inc. (SPEEA II), 541 Fed.Appx. 817, 819 (10th Cir. 2013). We stated that “the grievance procedure applies to grievances brought by individuals rather than class-wide grievances brought by the union.” Id. at 819 n.l. We did not address whether a grievance brought by an individual could raise class-wide concerns.[1]
C. Mr. Hartig’s Grievance
In spring 2013, at SPEEA’s suggestion, Spirit changed its health insurance plan to become self-funded.[2] Bill Hartig, a Spirit engineer and SPEEA member, filed a grievance in July 2013 challenging the $33.75 deduction from his paycheck for health care premiums. At step one, his supervisor responded that moving to self-funded health insurance “does not mean the insurance is ‘free.’ ” Aplt. App. Vol. 12 at 363. Mr. Hartig emailed his step-two appeal. On August 30, Spirit responded to the grievance, stating that “[insurance coverage is voluntarily elected during the annual open enrollment period, and the deductions from your wages are accurate and proper.” Aplt. App. Vol. 7 at 192. *720 Proceeding to step three, SPEEA appealed to human resources on behalf of Mr. Hartig. When Spirit asked for clarification of the issue, SPEEA’s general counsel responded:
[W]hether, after going self funded for the medical costs of its employees, the company can force the employees to pay 14% of some number the company determines. As far as a remedy goes, I will argue first that the whole unit gets the remedy of being made whole for all money paid pursuant to the 14%. In the alternative, if the arbitrator believes that this grievance has to be limited to Bill Hartig, he will get the make whole remedy and I will also seek a statement about the application of the language about the 14% going forward.
Aplt. App. Vol. 12 at 370. Spirit replied that the CBA does not authorize the union to bring a grievance and “broad, class-wide issues such as this are not subject to the contract’s grievance process.” It thus refused to have the step-three meeting and refused to submit the grievance to arbitration. Aplt. App. Vol. 7 at 193.
D. District Court Proceedings
SPEEA sued to compel arbitration. SPEEA’s Rule 30(b)(6) deponent testified it was seeking relief only for Mr. Hartig, not for the whole bargaining unit. The deponent testified “[t]hat [the general counsel’s theory at that point in time back in June that is no longer in play and the result of this hearing, if you will, these depositions, will determine the scope of what goes forward. This is what we are talking about.... Bill Hartig’s grievance as an individual for individual remedy.” Id. at 229-30; He also testified that the “grievance is about them taking out premiums or. employee contributions in a manner which is not outlined in our collective bargaining agreement. It has nothing to do with us and self-funding. It has to do with the actions by Spirit violating the employees!’] rights under the collective bargaining agreement.” Id. at 225.
On the parties’ cross motions for summary judgment, the district court ruled for Spirit. The court first stated that “it is the substance of the grievance,” not who initiates the grievance, “that determines whether it is a class or individual grievance.” Aplt. App. Vol. 16 at 545. Noting that the grievance was whether Spirit violated the CBA by shifting to a self-funded plan and deducting from the paycheck of “every employee who had elected to obtain healthcare benefits through the company,” the court found that Mr. Hartig’s grievance was “a broad, class-wide dispute.” Id. The court concluded that the grievance procedure does not cover class disputes because Section 3.3 applies to individual employees and Section 3.6 separates individual grievances into distinct arbitration decisions. Sections 8.2 and 18.2, which remove from the grievance process two types of disputes that “are generally class disputes,” id. at 546, also assured the co.urt. This appeal followed.
II. DISCUSSION
A. Collateral Estoppel
Spirit argues our decision in SPEEA II precludes this suit under the collateral estoppel doctrine. Collateral es-toppel “bars the successive litigation of any issue of law or' fact” if the proponent establishes:
(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is *721 raised had a Ml and fair opportunity to litigate the issue in the prior action.
Stan Lee Media, Inc. v. Walt Disney Co., 774 F.3d 1292, 1297 (10th Cir. 2014) (emphasis removed). In SPEEA II, the same parties as here received a final adjudication on the merits, and SPEEA had a Ml and fair opportunity to litigate the issue. But the issue presented here is different. In SPEEA II, the issue was whether the union could use the CBA’s grievance and arbitration procedure to pursue a class-wide dispute. Here, the issue is whether the CBA contemplates arbitration of class-wide disputes when an individual brings the grievance. We therefore proceed to the merits.
B. Summary Judgment Decision
We review summary judgment de novo, applying the same standard as the district court and viewing the evidence in the light most favorable to the non-moving party. Morris v. City of Colo. Springs, 666 F.3d 664, 660 (10th Cir. 2012). “The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,” Fed. R. Civ. P. 66(a). “If a reasonable jury could return a verdict for the nonmoving party, summary judgment is inappropriate.” Riser v. QEP Energy, 776 F.3d 1191, 1196 (10th Cir. 2015) (internal quotation marks omitted).
“Substantive arbitrability is concerned with the question of whether the parties have contractually agreed to submit a particular dispute to arbitration.” Denhardt v. Trailways, Inc., 767 F.2d 687, 690 (10th Cir. 1985). Procedural arbitrability concerns whether “conditions precedent to an obligation to arbitrate have been met.” Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (internal quotation marks omitted). Courts decide the former; arbitrators decide the latter. Id. As in SPEEA II, the issue here is substantive because we must determine “whether a [CBA] creates a duty for the parties to arbitrate [a] particular grievance.” AT & T Techs., Inc. v. Commc’ns Workers of Am., 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).
“[A] party cannot be forced to arbitrate any issue he has not agreed to submit to arbitration.” Commc’n Workers of Am. v. Avaya, Inc., 693 F.3d 1295, 1300 (10th Cir. 2012). “Arbitration is strictly a matter of consent and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.” Granite Rock Co. v. Int’l Bhd. of Teamsters, 561 U.S. 287, 299, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) (citation and internal quotation marks omitted). We thus look to the parties’ agreement, id. at 301, 303, 130 S.Ct. 2847, first asking whether it constitutes a valid agreement to arbitrate, and then whether the asserted dispute falls within the scope of the arbitration clause, id. at 299-301, 130 S.Ct. 2847. If the arbitration clause is clear, our inquiry is over, but if the arbitration clause is ambiguous about whether it covers the dispute, we apply a rebuttable presumption of arbitrability. See id. at 302-03, 130 S.Ct. 2847. This presumption is overcome only if we can say “with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.” AT&T, 475 U.S. at 650, 106 S.Ct. 1415; see also United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 584-85, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (“[0]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.”). “When deciding whether the parties agreed to arbitrate a certain matter eourts generally should apply ordinary principles that govern the formation of contracts.” Granite *722 Rock, 561 U.S. at 296, 130 S.Ct. 2847 (ellipses and quotations omitted).
Neither party argues the CBA lacks a valid agreement to arbitrate. Applying ordinary contract principles, we determine the parties intended to submit the grievance here to arbitration. We resolve any latent ambiguity in the CBA by presuming the parties intended to arbitrate, and finding the CBA does not clearly exclude such grievances from arbitration. Mr. Hartig filed the grievance and SPEEA has advanced it on his behalf. Though resolution of his dispute about deduction of health care premiums likely would affect other employees, this fact does not disqualify the dispute from arbitration under the CBA’s terms.
To begin with, no express provision removes all class-wide grievances over company policies from the Section 3,3 four-step grievance process. The grievance process contemplates complaints from individual employees like Mr. Hartig. It does not prevent a claimant from grieving an issue that may affect co-workers. Similarly, Section 3.6 requires separate and distinct arbitration hearings for each grievance, but it does not follow that resolution of a particular dispute must affect only one employee. The district court reasoned that a “class dispute over company policy is incapable of resolution” at steps one and two. Aplt. App. Vol. 16 at 546. But there is nothing in the CBA that prohibits Mr. Hartig’s grievance—deductions from his personal paycheck—from being heard and decided by his supervisor. In other words, a grieving employee raising a complaint with implications for others does not render the grievance process incapable of addressing his claim.
The district court also reasoned that Sections 8.2 and 18.2, which, respectively, exclude subcontracting deviations and class discrimination disputes from the grievance process, provide assurance that “Spirit did not intend to arbitrate class disputes.” Id. But, again, it does not follow that an individual employee’s complaint about health insurance premium deductions cannot be arbitrated because subcontracting deviations and class discrimination disputes cannot be arbitrated. If anything, the express exclusion of those, types of disputes from the grievance process indicates that other types of class disputes are permitted under Section 3.3.
The district court described Mr. Hartig’s grievance to be a “broad, class-wide dispute,” Aplt. App. Vol. 16 at 545, but the CBA does not distinguish between class and individual disputes except for specific enumerated instances, such as discrimination grievances. The court concluded the CBA indicated “that the grievance procedure was not meant to deal with class disputes,” but the CBA does not say that. See id. at 546. The Supreme Court has admonished that, “[i]n the absence of any express provision excluding a particular grievance from arbitration, ... only the most forceful evidence” can exclude a grievance from arbitration. Warrior & Gulf, 363 U.S. at 584-85, 80 S.Ct. 1347. There is no express provision in the CBA or forceful evidence that the grievance in this case is excluded from arbitration.
The district court relied in part for its construction of the CBA on an overbroad reading of SPEEA II, in which “class-wide grievance” referred to a grievance brought by the union. See 541 Fed.Appx. at 819-20 & n.l. We gave no indication that class-wide grievances brought by an employee are proscribed under the CBA, The fact that the union stepped into the process at step three to bring Mr. Hartig’s claim on his behalf does not change that Mr. Har-tig, not the union, initiated the grievance process. Unlike “a union-company dispute about company policy [which] would "be *723 incapable of resolution at Steps One and Two,” see id. at 820, Mr. Hartig’s grievance was capable of resolution at those stages, and the fact it might affect a large number of employees does not make it a union-company dispute. We had no occasion in SPEAA II to consider whether an individual can pursue a grievance in arbitration that would affect the interests of other employees.
III. CONCLUSION
The CBA’s arbitration clause must be enforced because no express language in the CBA and no “forceful evidence of purpose” show otherwise. See Warrior & Gulf, 363 U.S. at 585, 80 S.Ct. 1347. We therefore reverse the district court’s grant of summary judgment for Spirit.

 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir, R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R, 32.1.

. We do not think SPEAA ITs or the parties' references to a "class-wide” grievance or dispute are used in the sense of a class action under Federal Rule of Civil Procedure 23. Instead, we understand the term generally to refer to a claim that would affect the interests of most SPEEA employees.

. A "self-funded” health insurance plan differs from fully insured health insurance plans in that the employer assumes responsibility for payment of claims rather than the insurance company.