FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**January 25, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

MARK A. PENDERGRAFT,

    Plaintiff - Appellant,

v.

BOARD OF REGENTS OF OKLAHOMA
COLLEGES; DAVID MISAK, in his
individual and official capacities; TODD
THURMAN, in his individual and official
capacities,

    Defendants - Appellees.

No. 22-6045
(D.C. No. 5:18-CV-00793-D)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **TYMKOVICH**, and **MATHESON**, Circuit Judges.
_____

Mark Pendergraft filed a pro se lawsuit against the Board of Regents of

Oklahoma Colleges (BROC), David Misak, and Todd Thurman. The suit arose out of

an employment dispute involving a graduate assistant position with the softball

program at Southwestern Oklahoma State University (SWOSU). He brought federal

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

claims under the Equal Pay Act (EPA), Title VII, and 42 U.S.C. § 1983, as well as state claims for tortious interference with business relations, breach of contract, and tortious interference with prospective economic advantage. The district court granted defendants' Fed. R. Civ. P 12(b)(6) motions to dismiss the Title VII and § 1983 claims for failure to state a claim for relief. Defendants then moved for summary judgment on the remaining claims. The district court granted summary judgment in favor of BROC (the only applicable defendant) on the EPA claim. It then declined to exercise supplemental jurisdiction over the state claims and dismissed those claims without prejudice. Mr. Pendergraft now appeals.[1] Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I. Background

A. *Factual Background*

SWOSU is a public university that is governed by the BROC. In June 2016, SWOSU hired Kim Maher as its new head softball coach. SWOSU then posted two openings for graduate assistant positions with the softball program. Each position had the same salary, and each position also offered a tuition waiver.

---

[1] On appeal, Mr. Pendergraft does not challenge the district court's dismissal of his Title VII and § 1983 claims, nor does he challenge the district court's dismissal of the EPA claim against the individual defendants or the dismissal of the state claims against the individual defendants in their official capacities. Accordingly, he has waived any challenge to the dismissal of those claims. *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1140 (10th Cir. 2003) (holding that issues not raised on appeal are deemed waived).

Marsha Cusack, a high school softball coach, applied for one of the positions. Coach Maher wanted SWOSU to hire Ms. Cusack because Coach Maher had known Ms. Cusack for years and thought Ms. Cusack could bring experience and knowledge to SWOSU's softball program.

Coach Maher testified in her deposition that to get a more qualified coach, she needed to increase the pay. So she asked Defendant Todd Thurman, SWOSU Athletic Director, if the salaries allotted to the two graduate assistant positions could be combined for Ms. Cusack, leaving only a tuition waiver for the other graduate assistant position. Mr. Thurman submitted the proposal to the appropriate administrators, including Defendant David Misak, SWOSU Human Resources (HR) Director. SWOSU later hired Ms. Cusack at a salary equal to the combined amount of the salaries of the two previously posted graduate assistant positions.

Mr. Pendergraft also applied for the graduate assistant position. He had never coached softball at the college or high school level, but he had helped coach his daughter's youth travel softball team. Coach Maher recommended he be hired for the second position, but the parties dispute what happened next. In particular, the parties dispute whether Mr. Pendergraft was aware that the second position was an unpaid position, and they also dispute whether SWOSU ever officially hired Mr. Pendergraft.

Mr. Pendergraft asserts he was hired for a paid position, and he signed a pay action form on August 17, 2016, which is a document SWOSU uses to formalize employment agreements. After signing the pay action form, he contends that he

3

assisted Coach Maher that same day with unofficial visits for two high school softball recruits. But the next day when he was in the HR office, Mr. Pendergraft testified he was told by an HR employee that Mr. Thurman wanted to turn his paid position into a volunteer position. Mr. Pendergraft did not agree to that change, and he alleges Mr. Thurman fired him on August 19, 2016.

In contrast, defendants contend that Mr. Pendergraft knew the position was a volunteer position and that he had agreed to be a volunteer because he wanted to get some collegiate coaching experience. They also assert he was never a SWOSU employee because his conduct in the application process caused them to reconsider hiring him, he never signed a pay action form, and they withdrew the job posting for the second graduate assistant position. Regardless of whether Mr. Pendergraft was an employee or merely a candidate for an open position, the parties agree that his relationship with SWOSU ended on August 19, 2016.

B. *Procedural Background*

After defendants moved to dismiss his initial complaint, Mr. Pendergraft filed an amended complaint alleging that defendants: violated the EPA by employing a female coach and paying her twice what they agreed to pay him (Count I); unlawfully discriminated against him based on sex in violation of Title VII by terminating him because he is not a woman (Count II); tortiously interfered with his business right by terminating his employment agreement in bad faith (Count III); breached his contract with SWOSU by terminating his employment without just cause (Count IV); tortiously interfered with his prospective economic advantage by terminating his

4

employment agreement in bad faith (Count V); and conspiring against him to wrongfully terminate his employment agreement (Count VI).

Defendants filed a partial motion to dismiss, seeking dismissal of Count I against the individual defendants, and dismissal of Counts II, III, V, and VI against all defendants. The district court granted the motion to dismiss in part. It dismissed Count I against the individual defendants, Count II against all defendants, and Counts III, V, and VI against the individual defendants in their official capacities. The court dismissed Count VI without prejudice and gave Mr. Pendergraft the opportunity to amend his complaint to address the pleading deficiencies the court identified.

Mr. Pendergraft then filed what he called his Fourth Amended Complaint (although the district court noted it was only his third amended complaint). In it, he presented a revised Count VI, in which he alleged defendants violated § 1983 by acting under color of state law and conspiring to violate his constitutional rights. Defendants filed a partial motion to dismiss Count VI, which the district court granted.

Defendants next moved for summary judgment on all remaining claims: the EPA claim (Count I) against BROC, and the state claims (Counts III, IV, and V) against the individual defendants. The district court granted summary judgment in favor of BROC on Count I, and then declined to exercise supplemental jurisdiction over the remaining state claims against the individual defendants. The court

5

dismissed those claims without prejudice to Mr. Pendergraft refiling them in state court.

Mr. Pendergraft now appeals from the district court's summary-judgment decision.

II.  Discussion

A.  *EPA claim*

We review de novo the district court's grant of summary judgment in favor of defendants.  *Riser v. QEP Energy*, 776 F.3d 1191, 1195 (10th Cir. 2015).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[W]e view all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party."  *Riser*, 776 F.3d at 1195 (brackets and internal quotation marks omitted).

"The EPA prohibits wage discrimination 'between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'"  *Id.* (quoting 29 U.S.C. § 206(d)(1)).  The court's consideration of an EPA claim proceeds in two steps.  *See Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006).  "First, the plaintiff must establish a prima facie case of discrimination by demonstrating that employees of the opposite sex were paid differently for performing substantially equal work."  *Id.*  If the plaintiff does so, "the

6

burden of persuasion then shifts to the defendant to prove that the wage disparity was justified by one of four permissible reasons." *Id.* (emphasis omitted).

For Mr. Pendergraft to establish a prima facie case of pay discrimination under the EPA, he must demonstrate that: "(1) []he was performing work which was substantially equal to that of the [fe]male employee[] considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; [and] (3) the [fe]male employee[] w[as] paid more under such circumstances." *Riser*, 776 F3d at 1196 (internal quotation marks omitted). The district court assumed Mr. Pendergraft was an employee of SWOSU for purposes of summary judgment, after determining there were material facts in dispute on that issue. The court concluded, however, that Mr. Pendergraft failed to establish a prima facie case of pay discrimination under the EPA because he could not show he performed substantially equal work to that of Ms. Cusack.

The court noted Mr. Pendergraft's argument in response to summary judgment that he performed substantially equal work to Ms. Cusack because he participated in unofficial visit tours for two softball recruits and SWOSU used his name and likeness in the visit itineraries. The court then recited the record description of Ms. Cusack's work, which included "complet[ing] several tasks related to recruiting (identifying and monitoring potential recruits), practice (planning and coordinating training sessions), team travel (organizing lodging, transportation, and meals for the team), gameday preparation (scouting opposing teams), and field maintenance (chalking and dragging dirt)." R., vol. 3 at 270. The court found that "Ms. Cusack performed a

variety of functions for the softball program; Plaintiff participated in two recruitment tours." *Id.* It therefore concluded "[t]heir work was not substantially equal," *id.*, and, as a result, Mr. Pendergraft could not establish a prima facie case of pay discrimination under the EPA.

On appeal, Mr. Pendergraft's primary argument is that "the reason the workload was not substantially equal is because [he] was wrongfully terminated after (3) three days [of] employment without cause." Aplt. Opening Br. 13. He explains that "Coach Cusack was hired after [him] and was employed for a full year," so "[i]t would be impossible to compare" the work of the two jobs. *Id.* Mr. Pendergraft's claims alleging wrongful termination, however, have been dismissed. And as noted above, he does not challenge the dismissal of his Title VII claim on appeal, which alleged he was unlawfully terminated based on his sex. Further, for the reasons discussed below, we uphold the district court's decision to dismiss his state claims, which also alleged wrongful termination. We therefore agree that Mr. Pendergraft has not established a prima facie case of wage discrimination under the EPA, and we affirm the district court's grant of summary judgment in favor of BROC on that claim.

B. *State claims*

Mr. Pendergraft next contends "the District Court erred by refusing to exercise jurisdiction over [his] remaining State claims." *Id.* at 14. We review for abuse of discretion the district court's decision not to exercise supplemental jurisdiction over the state claims. *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1172 (10th Cir.

8

2009). A court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Here, the district court had dismissed all the federal claims and only state claims remained. In deciding not to exercise jurisdiction over the state claims, it first noted our guidance on the issue in *Crane v. Utah Department of Corrections*, 15 F.4th 1296 (10th Cir. 2021). In that case, we explained "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Id.* at 1314 (internal quotation marks omitted). The district court also noted that "'[t]he Supreme Court has encouraged the practice of dismissing state claims or remanding them to state court when the federal claims to which they are supplemental have dropped out before trial.'" R., vol. 3 at 271 (quoting *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020)). And the district court considered our decision in *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990), in which we explained that "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Id.* But we also recognized in *Thatcher* that a district court has discretion to exercise jurisdiction over state claims even in the absence of any triable federal claims, if given the nature and extent of pretrial proceedings, "judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Id.*

In considering whether to exercise jurisdiction over the state claims after the dismissal of the federal claims, the district court recognized the parties had engaged

9

in discovery and dispositive motions, but it noted no trial submissions had been made, no substantial trial preparations had happened, and the case was not currently set on any trial docket.  Given these circumstances, the court found the state claims should be dismissed without prejudice.

Mr. Pendergraft does not directly challenge the district court's reasoning or dispute the fact that no substantial trial preparations had happened.  Instead, he argues that the district court's decision will delay the resolution of his state claims, which will prejudice him.  But the district court properly considered precedential cases on the issue of supplemental jurisdiction, as well as the nature and extent of the pre-trial proceedings in this case, and we see no abuse of discretion in its decision to decline to exercise supplemental jurisdiction over Mr. Pendergraft's state claims after all federal claims were resolved.

III.  Conclusion

We affirm the district court's judgment.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge