**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AILEEN RIZO,
*Plaintiff-Appellee*,

v.

JIM YOVINO, Fresno County
Superintendent of Schools,
Erroneously Sued Herein as Fresno
County Office of Education,
*Defendant-Appellant.*

No. 16-15372

D.C. No.
1:14-cv-00423-
MJS

OPINION

On Remand from the United States Supreme Court

Resubmitted En Banc September 24, 2019[*]
San Francisco, California

Filed February 27, 2020

Before: Sidney R. Thomas, Chief Judge, and M. Margaret
McKeown, William A. Fletcher, Richard A. Paez, Marsha
S. Berzon, Richard C. Tallman, Consuelo M. Callahan,
Carlos T. Bea, Mary H. Murguia, Morgan B. Christen,
and Paul J. Watford, Circuit Judges.

---

[*] The panel unanimously concluded this case was suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

Opinion by Judge Christen;
Concurrence by Judge McKeown;
Concurrence by Judge Callahan

# SUMMARY[**]

## Employment Discrimination / Equal Pay Act

Affirming, on remand from the Supreme Court, the district court's order denying defendant's motion for summary judgment on claims under the Equal Pay Act, the en banc court held that plaintiff's prior rate of pay was not a "factor other than sex" that allowed defendant to pay her less than male employees who performed the same work, and only job-related factors may serve as affirmative defenses to Equal Pay Act claims.

The en banc court's previous opinion was vacated by the Supreme Court on a procedural issue concerning the death of the author of the majority opinion.  On remand, the en banc court affirmed the district court's denial of summary judgment.  Agreeing with other circuits, the en banc court held that the scope of the "factor other than sex" affirmative defense is limited.  Based on the text and purpose of the Equal Pay Act, the en banc court held that this defense comprises only job-related factors.  The en banc court held that prior pay does not qualify as a job-related factor that can defeat a prima facie Equal Pay Act claim.  The en banc court overruled *Kouba v. Allstate Ins. Co.*, 691 F.2d 873 (9th Cir. 1982), which held that prior pay could qualify as an affirmative defense if the employer considered prior pay in combination with other factors and used it reasonably to effectuate a business policy.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Concurring, Judge McKeown, joined by Judges Tallman and Murguia, wrote that prior salary alone is not a defense to unequal pay for equal work, but employers do not necessarily violate the Equal Pay Act when they consider prior salary among other factors when setting initial wages. Accordingly, Judge McKeown concurred in the result but not in the majority's rationale.

Concurring, Judge Callahan, joined by Judges Tallman and Bea, disagreed with the majority's holding that prior pay can never be considered as a factor in determining pay under the Equal Pay Act.

---

## COUNSEL

Shay Dvoretsky (argued) and Jeffrey R. Johnson, Jones Day, Washington, D.C.; Michael G. Woods and Timothy J. Buchanan, McCormick Barstow Sheppard Wayte & Carruth LLP, Fresno, California; for Defendant-Appellant.

Daniel M. Siegel (argued) and Kevin Brunner, Siegel Yee Brunner & Mehta, Oakland, California, for Plaintiff-Appellee.

Jessica Stender (argued) and Jennifer A. Reisch, Equal Rights Advocates, San Francisco, California; Marianne Reinhold, Laurence S. Zakson, and Aaron G. Lawrence, Reich Adell & Cvitan, Los Angeles, California; for Amici Curiae Equal Rights Advocates; 9to5, National Association of Working Women; American Association of University Women; American Association of University Women—California Chapter; ACLU of Northern California and ACLU Women's Rights Project; Atlanta Women for Equality; California

Women's Law Center; Feminist Majority Foundation; Legal Aid at Work; Legal Voice; National Organization for Women (NOW) Foundation; National Partnership for Women and Families; National Women's Law Center; Southwest Women's Law Center; Women Employed; and Women's Law Project; Make-Up Artists and Hair Stylists Guild, Local 706 of the International Alliance of Theatrical State Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, its Territories and Canada, AFL-CIO, CLC; Costume Designers Guild, Local 892 of the International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, its Territories and Canada, AFL-CIO, CLC; Orange County Managers Association; Clearinghouse on Women's Issues; Gender Justice; KWH Law Center for Social Justice and Change; and National Asian Pacific American Women's Forum; National Council of Jewish Women.

Barbara L. Sloan (argued), Attorney; Margo Pave and Elizabeth E. Theran, Assistant General Counsel; Jennifer S. Goldstein, Associate General Counsel; James L. Lee, Deputy General Counsel; P. David Lopez, General Counsel; Office of the General Counsel, Washington, D.C.; as and for Amicus Curiae Equal Employment Opportunity Commission.

Rae T. Vann and Danny E. Petrella, Washington, D.C., for Amicus Curiae Center for Workplace Compliance.

## OPINION

CHRISTEN, Circuit Judge:

In 1963, Congress enacted the Equal Pay Act with a mandate as simple as it was profound: equal pay for equal work. The question we consider today is whether Aileen Rizo's prior rate of pay is a "factor other than sex" that allows Fresno County's Office of Education to pay her less than male employees who perform the same work. 29 U.S.C. § 206(d)(1)(iv). We conclude it is not.

Congress enacted the Equal Pay Act (EPA) to combat pay disparities caused by sex discrimination, but it allowed employers to justify different pay for employees of the opposite sex based on three enumerated affirmative defenses, or "any *other* factor other than sex." *Id.* (emphasis added). Contrary to Fresno County's argument, we conclude that only job-related factors may serve as affirmative defenses to EPA claims.

The express purpose of the Act was to eradicate the practice of paying women less simply because they are women. Allowing employers to escape liability by relying on employees' prior pay would defeat the purpose of the Act and perpetuate the very discrimination the EPA aims to eliminate. Accordingly, we hold that an employee's prior pay cannot serve as an affirmative defense to a prima facie showing of an EPA violation.

## I. Background

The Fresno County Office of Education hired Aileen Rizo as a math consultant in October 2009. She held two master's

degrees when she was hired: one in educational technology and one in mathematics education. She began teaching middle and high school math in 1996. Her employment experience included three years as head of the math department for an online school and designer of the school's math curriculum. Rizo worked at this position while earning her first master's degree. She taught middle school math for six more years, and then she was hired by Fresno County.

The County set its new employees' salaries according to a pay schedule governed by Standard Operating Procedure 1440 (SOP 1440). The schedule designated 12 salary levels. Each level corresponded to different job classifications and had up to 10 steps. To calculate a new employee's pay, the County started with the employee's prior wages, increased the wages by 5%, and placed the employee at the corresponding step on its pay schedule. Rizo's prior employer paid her $50,630 for 206 days of work, plus an additional $1,200 because she had a master's degree. Based on her prior wages, the County placed Rizo at Step 1, Level 1 on its pay schedule. Her starting wage at Fresno County was $62,133 for 196 days of work, plus an additional $600 for holding a master's degree.

While having lunch with colleagues in 2012, Rizo learned that a newly hired male math consultant had been placed at Level 1, Step 9. That put the new consultant's starting pay at $79,088, significantly more than Rizo was paid after working three years for the County. Rizo realized that she was the only female math consultant at Fresno County, and that all of her male colleagues were paid more than she was, even though she had more education and experience. She expressed concern about this pay disparity to the Human Resources department, and an administrator gave her a copy

of SOP 1440. The administrator assured Rizo that the policy was applied across the board, regardless of the employee's sex.

In February 2014, Rizo filed a complaint in Fresno County Superior Court against the Superintendent of Fresno County's Office of Education.[1] The complaint alleged that the County violated the Equal Pay Act, 29 U.S.C. § 206(d), and included claims for sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; sex discrimination under California's Fair Employment and Housing Act, § 12940(a); and failure to prevent discrimination under California's Fair Employment and Housing Act, § 12940(k).

Fresno County removed the complaint to the United States District Court for the Eastern District of California, and in June 2015 it moved for summary judgment. The County's motion did not contest that Rizo was paid less than her male counterparts or that Rizo established a prima facie EPA violation. Instead, the County argued that Rizo's pay was the result of SOP 1440, and that this pay policy, which was based solely on its employees' prior pay, was a "factor other than sex" that defeated Rizo's EPA claim.

In the district court, both parties argued that *Kouba v. Allstate Insurance Co.*, 691 F.2d 873 (9th Cir. 1982), supported their positions. *Kouba* considered whether an employee's prior pay, in combination with other factors, justified a pay differential between two workers of the

---

[1] Because Yovino is sued in his official capacity as Superintendent, we refer to the appellant as "Fresno County" or "the County" throughout this opinion.

opposite sex. *Id.* at 875. We held that the EPA "does not impose a strict prohibition against the use of prior salary," so long as employers consider prior pay "reasonably" to advance "an acceptable business reason." *Id.* at 876–77, 878. The district court concluded that *Kouba* did not resolve whether the pay disparity in Rizo's case violated the EPA because the differential resulted solely from Rizo's prior rate of pay, not from her prior pay in combination with other factors. *See Rizo v. Yovino*, No. 1:14-cv-0423-MJS, 2015 U.S. Dist. LEXIS 163849, at *21–22 (E.D. Cal. Dec. 4, 2015). The court held that "a pay structure based exclusively on prior wages is so inherently fraught with the risk—indeed, here, the virtual certainty—that it will perpetuate a discriminatory wage disparity between men and women that it cannot stand, even if motivated by a legitimate non-discriminatory business purpose." *Id.* at *26. The court concluded that the County's "SOP 1440 necessarily and unavoidably conflicts with" the EPA, and it denied the County's motion for summary judgment. *Id.*

The district court certified its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). A three-judge panel reversed and held that the district court was bound by *Kouba*. *See Rizo v. Yovino*, 854 F.3d 1161 (9th Cir. 2017), *reh'g en banc granted*, 869 F.3d 1004 (9th Cir. 2017). A majority of the active members of our court voted to hear the County's appeal en banc, *see Rizo v. Yovino*, 869 F.3d 1004 (9th Cir. 2017), and the en banc court issued an opinion on April 9, 2018. *See Rizo v. Yovino*, 887 F.3d 453 (9th Cir. 2018). The Supreme Court subsequently vacated our decision on a

procedural issue.[2]    The parties submitted supplemental briefing after the case was remanded from the Supreme Court, and we reconsidered the County's appeal.  We have jurisdiction pursuant to 28 U.S.C. § 1292(b), and we affirm the district court's order denying the County's motion for summary judgment.

## II.  Standard of Review

We review the district court's order denying summary judgment *de novo*.  *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1023 (9th Cir. 2012).  "We adopt the same standard used by the district court and 'view the evidence in the light most favorable to the nonmoving party, determine whether there are any genuine issues of material fact, and decide whether the district court correctly applied the relevant substantive law.'"  *Booth v. United States*, 914 F.3d 1199, 1203 (9th Cir. 2019) (quoting *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016)).

## III.  Discussion

We took this case en banc to reconsider *Kouba*'s rule that prior pay can qualify as an affirmative defense to an EPA

---

[2] The author of the majority opinion, Judge Stephen Reinhardt, died eleven days before the en banc opinion issued.  Fresno County petitioned for certiorari on the merits and also argued the opinion should not have been issued after Judge Reinhardt died.  *See* Pet. for Writ of Cert., *Yovino v. Rizo*, 139 S. Ct. 706 (2019) (per curiam) (No. 18-272).  The Supreme Court granted the petition and held that it was error to issue the opinion after Judge Reinhardt's death.  *Yovino*, 139 S. Ct. at 710.  On remand from the Supreme Court, another judge was selected at random to participate on the en banc panel.

claim if the employer considers prior pay in combination with other factors and uses it reasonably to effectuate a business policy. On appeal, the County contends that its policy of setting employees' wages based on their prior pay is premised on a factor other than sex. Therefore, the County argues, its use of prior pay is a valid affirmative defense. The County concedes that it has no other defense to Rizo's claim.

Rizo responds that the use of prior pay to set prospective wages, by its nature, would perpetuate the gender-based pay gap indefinitely. She argues that because Congress aimed to eliminate deeply rooted pay discrimination between male and female employees who perform the same work, employers are not allowed to rely on prior pay to justify wage disparities for employees of the opposite sex. We agree with Rizo.

The Equal Pay Act was enacted as an amendment to the Fair Labor Standards Act. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 190 (1974). In *Corning Glass*, the Supreme Court observed, "Congress' purpose in enacting the Equal Pay Act was to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry." *Id.* at 195. The EPA was described as "a very simple piece of legislation" establishing that "equal work will be rewarded by equal wages." S. Rep. No. 88-176, at 1 (1963); *Equal Pay Act of 1963, S. Comm. on Labor*, 88th Cong. 12 (1963) (statement of Sen. Clifford P. Case). The EPA provides:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal

> work on jobs the performance of which
> requires equal skill, effort, and responsibility,
> and which are performed under similar
> working conditions . . . .

29 U.S.C. § 206(d)(1). The statute identifies four exceptions to its equal-pay mandate:

> except where such payment is made pursuant
> to (i) a seniority system; (ii) a merit system;
> (iii) a system which measures earnings by
> quantity or quality of production; or (iv) a
> differential based on *any other factor other
> than sex* . . . ."

*Id.* (emphasis added).

The EPA's four exceptions operate as affirmative defenses. *Corning Glass*, 417 U.S. at 196–97; *Kouba*, 691 F.2d at 875. As the Supreme Court has explained, the Act's structure is straightforward. *Corning Glass*, 417 U.S. at 195. An employee bears the burden of establishing a prima facie case of wage discrimination by showing that "the employer pays different wages to employees of the opposite sex for substantially equal work." *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (9th Cir. 1986). If the plaintiff puts forth a prima facie case of an EPA violation, "the burden shifts to the employer to show that the differential is justified under one of the Act's four exceptions." *Corning Glass*, 417 U.S. at 196. To counter a prima facie case, an employer must prove "not simply that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity." *EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 121 (4th Cir. 2018) (emphasis in

original) (citing *Stanziale v. Jargowsky*, 200 F.3d 101, 107–08 (3d Cir. 2000)); *see also Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1312 (10th Cir. 2006).

A wage differential arose in *Corning Glass* because male employees were not willing to work for the low wages paid to women. *Corning Glass* rejected what was later called the "market force theory," holding that the EPA did not permit Corning Glass to pay women less simply because they were willing to work for less. *See* 417 U.S. at 205. The Court explained that although it may have been "understandable as a matter of economics" that the company took advantage of these market conditions, "its [wage] differential nevertheless became illegal once Congress enacted into law the principle of equal pay for equal work." *Id.*

Unlike Title VII, the EPA does not require proof of discriminatory intent. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 640 (2007) (stating that "the EPA and Title VII are not the same," in part because "the EPA does not require . . . proof of intentional discrimination"), *superseded by statute*, Lilly Ledbetter Fair Pay Act, Pub. L. No. 111-2, 123 Stat. 5 (2009); *Maxwell*, 803 F.2d at 446 (observing the EPA "creates a type of strict liability" and "no intent to discriminate need be shown"). For that reason, the familiar three-step *McDonnell Douglas* framework that applies to Title VII claims is not used in EPA cases. *See Corning Glass*, 417 U.S. at 195–96; *see also* 6 Larson on Emp't Discrimination § 108.10 (2019) ("Note that the *McDonnell* [*Douglas*]-*Burdine* burden-shifting framework does not apply to Equal Pay Act discrimination claims, since there is no need for the EPA plaintiff to show discriminatory animus."); 1 Sex-Based Emp't Discrimination § 7:1 (Oct.

2019) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

The EEOC's amicus brief observes that some of our prior case law "could be read to blur the line between Title VII and the EPA" by incorrectly suggesting that the third step of the *McDonnell-Douglas* test applies to EPA claims. We agree that our case law has confused this point. Likely because of dicta in our previous cases,[3] the district court suggested that Rizo would bear the burden of showing pretext if the County demonstrated that a factor other than sex accounted for Rizo's pay. This is not correct. To clear up any confusion, we reiterate that EPA claims do not require proof of discriminatory intent. *See Maxwell*, 803 F.2d at 446; *see also Ledbetter*, 550 U.S. at 640. EPA claims have just two steps: (1) the plaintiff bears the burden to establish a prima facie showing of a sex-based wage differential; (2) if the plaintiff is successful, the burden shifts to the employer to show an affirmative defense. No showing of pretext is required.[4]

---

[3] *See, e.g.*, *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1076 (9th Cir. 1999) (suggesting that the EPA plaintiff *bore the burden* of demonstrating a material factual dispute regarding pretext in order to survive summary judgment); *see also Maxwell*, 803 F.2d at 446.

[4] *Accord Md. Ins. Admin.*, 879 F.3d at 120 n.6 ("The EPA burden-shifting framework is distinct from the *McDonnell Douglas* burden-shifting framework that we apply when reviewing claims brought under Title VII."); *Taylor v. White*, 321 F.3d 710, 716 (8th Cir. 2003) (the EPA's "analytical framework differs from the [*McDonnell Douglas*] burden shifting analysis"); *Stanziale*, 200 F.3d at 107 ("[C]laims based upon the Equal Pay Act do not follow the three-step burden-shifting framework of [*McDonnell Douglas*]; rather, they follow a two-step burden-shifting paradigm." (internal citation omitted)); *see also Buntin v. Breathitt Cty. Bd. of Educ.*, 134 F.3d 796, 799 & n.6 (6th Cir. 1998); *McMillan v. Mass. SPCA*, 140 F.3d 288, 298 (1st Cir. 1998). *But see Wernsing v. Dep't of*

## A.

This appeal requires that we consider the scope of the EPA's fourth exception. The County contends that the fourth exception allows any factor that is not sex itself to serve as an affirmative defense. We conclude otherwise. As we recognized in *Kouba*, and as the Second, Fourth, Sixth, Tenth, and Eleventh Circuits have ruled, the scope of the fourth exception is limited. *See Kouba*, 691 F.2d at 876; *see also Md. Ins. Admin.*, 879 F.3d at 122–23; *Riser v. QEP Energy*, 776 F.3d 1191, 1198 (10th Cir. 2015); *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 525 (2d Cir. 1992); *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1570–71 (11th Cir. 1988); *EEOC v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir. 1988) ("[T]he 'factor other than sex' defense does not include literally *any* other factor . . . ."). Based on the text and purpose of the Act, we conclude that the fourth affirmative defense comprises only job-related factors, not sex.

To define the scope of the EPA's fourth exception, we begin with the language of the statute and apply familiar principles of statutory construction. Congress first defined the protection afforded by the statute in job-related terms—equal pay for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). It then specifically enumerated three

---

*Human Servs.*, 427 F.3d 466, 469 (7th Cir. 2005); *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995) (applying the *McDonnell Douglas* framework to an EPA claim and requiring "the plaintiff must rebut the explanation [for the differential] by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential.").

exceptions to the prohibition of sex-based distinctions for such work, but described the fourth generally as "any other factor other than sex." The fourth exception is often shortened to "any factor other than sex," but here we are called upon to define its precise contours and we examine every word: "any *other* factor other than sex." *Id.* § 206(d)(1)(iv) (emphasis added). Giving meaning to each word by its context, the phrase "any other factor other than sex" requires that the fourth exception be read in relation to the three exceptions that precede it, as well as in relation to the "equal work" principle to which it is an exception. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012); *see also* William N. Eskridge Jr., *Interpreting Law: A Primer on How to Read Statutes and the Constitution* 113 (2016). If *any* factor other than sex could defeat an EPA claim, the first "other" in the phrase "any other factor other than sex" would be rendered meaningless, as would the three enumerated exceptions. *See* Norman J. Singer & Shambie Singer, 2A *Sutherland Statutory Construction* § 46:6 (7th ed.) ("It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute."). Because the three enumerated exceptions are all job-related, and the elements of the "equal work" principle are job-related, Congress' use of the phrase "any *other* factor other than sex" (emphasis added) signals that the fourth exception is also limited to job-related factors.

Other well-settled rules of statutory construction reinforce the conclusion that the fourth affirmative defense includes factors of the same type as the ones Congress specifically identified. The first is the *noscitur a sociis* canon—a word is known by the company it keeps. *See Sutherland*, § 47:16 ("[A] word is given more precise content by the neighboring

words with which it is associated."). This rule provides that words grouped together should be given similar or related meaning to avoid "giving unintended breadth to the Acts of Congress." *See, e.g.*, *Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) (plurality opinion) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). In the EPA, the first three exceptions—seniority systems, merit systems, and productivity systems—relate to job experience, job qualifications, and job performance. Because the enumerated exceptions are all job-related, the more general exception that follows them refers to job-related factors too.[5] *See, e.g.*, Eskridge at 77.

Relatedly, the EPA's list of specific exceptions is followed by a general exception and this calls for application of the *ejusdem generis* canon. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018) ("[W]here . . . a more general term follows more specific terms in a list, the general term is usually understood to 'embrace only objects similar in nature to those objects enumerated by the preceding specific words.'") (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001)). The *ejusdem generis* canon provides that the EPA's three specific exceptions cabin the scope of the general exception. *See Sutherland*, § 47:17. "The principle of *ejusdem generis* essentially . . . implies the addition of *similar* after the word *other*." Scalia & Garner at 199 (emphasis in original). Thus, "any other factor other than sex" implicitly refers to "any other *similar* factor other than sex." *See Circuit City*, 532 U.S. at 114–15 (holding that the phrase "any other class of workers engaged in . . . commerce," following the specific examples of seamen and

---

[5] Contrary to our concurring colleague's assertion, seniority systems reward job experience and are plainly job-related.

railroad employees, includes only "transportation workers," because construing it to include all other workers "fails to give independent effect to the statute's enumeration of the specific categories of workers" that precede it).

Applying the *ejusdem generis* canon to the EPA's fourth exception, we consider the scope of the category implied by the three enumerated exceptions and "ask what category would come into the reasonable person's mind." Scalia & Garner at 208; *see also* Eskridge at 78. Here, the obvious category is job-relatedness. Because all of the enumerated exceptions are job-related, the general exception that follows—"any other factor other than sex"—is limited to job-related factors.

## B.

As the Supreme Court did in *Corning Glass*, we also look to the EPA's history and purpose. 417 U.S. at 195. Both confirm the scope of the Act's fourth exception.

The Supreme Court emphasized in *Corning Glass* that the EPA was intended to address "the fact that the wage structure of 'many segments of American industry [had] been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same.'" *Id.* (quoting S. Rep. No. 88-176, at 1). The problem of wage discrimination was "overwhelmingly apparent" to Congress when it passed the EPA in 1963. S. Rep. No. 88-176, at 3. Congress heard testimony that women in the workplace were no longer a novelty. One in three workers were women, yet sex-based wage discrimination remained overt and widely accepted. President's Comm'n on the Status of Women, *American*

*Women*, at 27 (1963).[6]   Among other things, Congress considered a survey of 1,900 employers that showed one in three used entirely separate pay scales for female employees who performed similar jobs to male employees.[7]   Congress also considered that, in 1963, American women could expect to earn only about 60% of the wages paid to their male colleagues.  *Id.*

The County's suggestion that the EPA's legislative history supports an expansive reading of the fourth exception is unavailing.  The House Report provided several examples that it anticipated would qualify as exceptions to the equal pay mandate, and all were job related: shift differentials, differences based on time of day worked, hours of work, lifting or moving heavy objects, and differences based on experience, training, or ability.  H.R. Rep. No. 88-309, at 3 (1963); *see also* 109 Cong. Rec. 8683 (1963) (statement of Rep. Adam Powell) (rejecting "[t]he payment of wages on a basis other than that of the job performed"); *id.* at 8694 (statement of Rep. Edith Green) (speaking against a proposal to allow higher wages for heads of household with more dependents, because "[t]his [Act] is based on merit, on work

---

[6]   *Available at* https://www.dol.gov/wb/American% 20Women%20Report.pdf; *see also* Staff of H. Comm. on Educ. & Labor, 88th Cong., Legis. Hist. of the Equal Pay Act of 1963 4, 27 (Comm. Print 1963); *Equal Pay Act of 1963: Hearings on S. 882 and S. 910 Before the Subcomm. on Labor of the S. Comm. on Labor & Pub. Welfare*, 88th Cong. 13–14 (1963) (statement of Sen. Maurine B. Neuberger); *id.* at 16 (statement of W. Willard Wirtz, Sec'y of Labor).

[7] *See* 109 Cong. Rec. 8688 (1963) (statement of Rep. Edith Green); *Equal Pay Act of 1963: Hearings on S. 882 and S. 910 Before the Subcomm. on Labor of the S. Comm. on Labor & Pub. Welfare*, 88th Cong. 14 (1963) (statement of Sen. Maurine B. Neuberger).

that is performed, rather than on other factors"). The equal-pay-for-equal-work mandate would mean little if employers were free to justify paying an employee of one sex less than an employee of the opposite sex for reasons unrelated to their jobs. *See, e.g.*, Scalia & Garner at 20 ("The evident purpose of what a text seeks to achieve is an essential element of context that gives meaning to words."); *see also Dig. Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 777 (2018) (explaining that the relevant statute's "purpose and design corroborate . . . comprehension" of a specific provision).

## C.

Other circuits agree that only job-related factors provide affirmative defenses to EPA claims. In *Aldrich v. Randolph Central School District*, the Second Circuit reasoned, "[w]ithout a job-relatedness requirement, the factor-other-than-sex defense would provide a gaping loophole in the statute through which many pretexts for discrimination would be sanctioned." 963 F.2d at 525; *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1312 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)).

The Fourth and Tenth Circuits followed the Second Circuit's lead. Both have ruled that pay classification systems must be rooted in legitimate differences in responsibilities or qualifications for specific jobs. *See Md. Ins. Admin.*, 879 F.3d at 123 ("[W]hile MIA uses a facially gender-neutral compensation system, MIA still must present evidence that the *job-related distinctions* underlying the salary plan . . . *in fact* motivated MIA to place the claimants and the comparators on different steps of the pay scale at different starting salaries." (first emphasis added)); *Riser*,

776 F.3d at 1198; *see also Balmer v. HCA, Inc.*, 423 F.3d 606, 612 (6th Cir. 2005), *abrogated on other grounds by Fox v. Vice*, 563 U.S. 826 (2011).

Only the Seventh Circuit has held that the scope of the fourth exception "embraces an almost limitless number of factors, so long as they do not involve sex." *Fallon v. Illinois*, 882 F.2d 1206, 1211 (7th Cir. 1989). The Seventh Circuit has not required that those factors be related "to the requirements of the particular position in question." *Id.* The Seventh Circuit's opinion is an outlier, and we cannot reconcile it with either well-settled rules of statutory construction or the "broadly remedial" purpose of the EPA. *See Corning Glass*, 417 U.S. at 208.

The Eighth Circuit has not established a bright-line rule defining factors other than sex. It requires a case-by-case analysis of the proffered factor to "preserve[] the business freedoms Congress intended to protect." *Taylor v. White*, 321 F.3d 710, 720 (8th Cir. 2003). We are not persuaded to follow this approach because "business freedoms" is broad enough to accommodate circumstances that run afoul of the Supreme Court's admonition in *Corning Glass* that market forces cannot justify unequal pay for comparable work.

A significant majority of the circuit courts agree that the scope of the EPA's fourth exception is not unlimited. Rather, the text of the Act and canons of construction, and the EPA's history and clear purpose, all point to the conclusion that the fourth exception is limited to job-related factors only.

**D.**

Having determined that the fourth affirmative defense encompasses only job-related factors other than sex, we next consider whether prior pay qualifies as a job-related factor that can defeat a prima facie EPA claim.  The answer to this question is compelled by the EPA's narrow focus on the purest form of sex-based wage discrimination and the statute's two-step framework.  Prior pay—pay received for a different job—is necessarily not a factor related to the job for which an EPA plaintiff must demonstrate unequal pay for equal work.

In 1963, Congress not only knew that wages earned by America's workforce were infused with the legacy of sex discrimination, that legacy motivated Congress to act.  *See, e.g.*, S. Rep. No. 88-176, at 2–3.  The Assistant Secretary of Labor testified that women on average earned only about 59% of what their male colleagues earned,[8] but Congress recognized that America's pay gap was not entirely attributable to sex-based wage discrimination.  The gap was also due to circumstances that caused women to be less prepared to enter the workforce, such as fewer opportunities for training, education, skills development, and experience. *See Kouba*, 691 F.2d at 876.  Though Congress knew the cause of America's earnings gap was multi-factorial, it kept

---

[8] *Equal Pay Act of 1963: Hearings on S. 882 and S. 910 Before the Subcomm. on Labor of the S. Comm. on Labor & Pub. Welfare*, 88th Cong. 68 (1963) (statement of Esther Peterson, Assistant Sec'y of Labor).

its solution simple.[9] The EPA did not raise women's wages nor create remedial education or training opportunities. The Act's limited goal was to eliminate only the purest form of sex-based wage discrimination: paying women less *because* they are women.

The precise and focused goal of the EPA is evidenced by the exceptions built into it that expressly allow employers to pay different wages to employees of the opposite sex if the differences are caused by job-related factors other than sex. H.R. Rep. No. 88-309, at 3. As the Supreme Court explained in *County of Washington v. Gunther*, the EPA's fourth exception was intended "to confine the application of the Act to wage differentials attributable to sex discrimination." 452 U.S. 161, 170 (1981). The EPA's limited aim at just one of the many causes of the wage gap reinforces our conclusion that allowing prior pay to serve as an affirmative defense would undermine the Act's promise of equal pay for equal work. Our interpretation, that only job-related factors come within the "any other factor" rubric and do not include prior pay, is consistent with the Supreme Court's guidance in *Corning Glass* that "[t]he Equal Pay Act is broadly remedial, and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve." 417 U.S. at 208.

The County argues that Rizo presumes the use of past wages perpetuates historic pay discrimination, and that Rizo impermissibly shifts the burden to the County to disprove the influence of wage discrimination on her prior pay. The

---

[9] *Equal Pay Act of 1963: Hearings on S. 882 and S. 910 Before the Subcomm. on Labor of the S. Comm. on Labor & Pub. Welfare*, 88th Cong. 68 (1963) (statement of Esther Peterson, Assistant Sec'y of Labor).

County's argument reflects its confusion about the EPA's burden-shifting framework, which we have now clarified. We agree the EPA does not require employers to prove that the wages paid to their employees at prior jobs were unaffected by wage discrimination. But if called upon to defend against a prima facie showing, the EPA requires employers to demonstrate that only job-related factors, not sex, caused any wage disparities that exist between employees of the opposite sex who perform equal work. Accordingly, what the County considers to be an impermissible shift is actually the burden-shift *required* by the EPA's two-step framework. After Rizo established a prima facie showing, the County had the burden of proving that "sex provide[d] *no* part of the basis for the wage differential." *Balmer*, 423 F.3d at 612 (quoting *Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 844 (6th Cir. 1997)) (emphasis in original); *see also Md. Ins. Admin.*, 879 F.3d at 121 (citing *Stanziale*, 200 F.3d at 107–08); *Mickelson*, 460 F.3d at 1312.

We do not presume that any particular employee's prior wages were depressed as a result of sex discrimination. But the history of pervasive wage discrimination in the American workforce prevents prior pay from satisfying the employer's burden to show that sex played no role in wage disparities between employees of the opposite sex. And allowing prior pay to serve as an affirmative defense would frustrate the EPA's purpose as well as its language and structure by perpetuating sex-based wage disparities.

We acknowledge that prior pay could be viewed as a *proxy* for job-related factors such as education, skills, or experience related to an employee's prior job, and that prior pay can be a *function* of factors related to an employee's prior

job. But prior pay itself is not a factor related to the work an employee is currently performing, nor is it probative of whether sex played any role in establishing an employee's pay. Here, the County has not explained why or how prior pay is indicative of Rizo's ability to perform the job she was hired to do. An employer may counter a prima facie EPA claim by pointing to legitimate job-related factors, if they exist. Accordingly, using the heuristic of an employee's prior pay, rather than relying on job-related factors actually associated with an employee's present position, does not suffice to defeat an EPA claim.

We agree with Rizo and the EEOC that setting wages based on prior pay risks perpetuating the history of sex-based wage discrimination. The Supreme Court recognized as much in *Corning Glass*. There, the Court held that a sex-based pay disparity violated the EPA. 417 U.S. at 209–10. After Corning Glass administered a uniform wage increase to the men and women who worked pursuant to its prior discriminatory pay structure, Corning Glass argued that the continuing wage differential was due to a "factor other than sex" because it resulted from the prior disparity in the employees' base wages. *Id.* The Court ruled that Corning Glass's across-the-board wage increase did not remedy the EPA violation, it merely perpetuated the differential. *Id.*

Hopefully, we have moved past the days when employers maintained separate pay scales that explicitly condoned paying women less than men for comparable work, but the wage gap that so concerned Congress in 1963 has only narrowed, not closed. The wage gap persists across nearly all occupations and industries, regardless of education,

experience, or job title.[10]  In 2017, women on average earned 82% of men's earnings.  *See* U.S. Bureau of Labor Statistics, Rep. 1075, *Highlights of Women's Earnings in 2017*, 1–2 (Aug. 2018).[11]  These differences are even more pronounced among women of color. *Id.* at 3–4.[12]  Women of all races and ethnicities earn less than men of the same group, *id.* at 4, and economic literature suggests that even after accounting for certain observable characteristics—such as education and experience—an unexplained disparity largely persists.  *See, e.g.*, Francine D. Blau & Lawrence M. Kahn, *The Gender Wage Gap: Extent, Trends, and Explanations*, 55 J. Econ. Literature 789, 790, 852–55 (2017).

To the extent the present-day pay gap is the product of historic wage discrimination based on sex—rather than different pay due to unequal qualifications, effort, productivity, regional cost of living, or other factors other than sex—the gap is a continuation of the very discrimination Congress sought to end.  In *Kouba*, we cautioned that the use

---

[10] *See* U.S. Census Bureau, *Women's Earnings Lower in Most Occupations* (May 22, 2018), https://www.census.gov/library/stories/2018/05/gender-pay-gap-in-finance-sales.html; *see also* Inst. for Women's Pol'y Res., *The Gender Wage Gap by Occupation 2018 and by Race and Ethnicity* (April 2, 2019) (citing U.S. Bureau of Labor Statistics, *Current Population Survey* (2018)), https://iwpr.org/wp-content/uploads/2019/04/C480_The-Gender-Wage-Gap-by-Occupation-2018-1.pdf.

[11] https://www.bls.gov/opub/reports/womens-earnings/2017/pdf/home.pdf.

[12] *See also* Nat'l Women's L. Ctr., *The Wage Gap: The Who, How, Why, and What to Do* (Sept. 2019) (citing U.S. Census Bureau, *Current Population Survey*, 2019 Ann. Soc. & Econ. Supp., Table PINC-05), https://nwlc.org/resources/the-wage-gap-the-who-how-why-and-what-to-do/.

of prior pay to defend against equal-pay violations "can easily be used to capitalize on the unfairly low salaries historically paid to women." 691 F.2d at 876. Other circuits have made the same observation. *See, e.g.*, *Taylor*, 321 F.3d at 718 (cautioning that prior pay may be used as "a means to perpetuate historically lower wages"); *Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995) (stating that allowing prior pay as an affirmative defense "would swallow up the rule and inequality in pay among genders would be perpetuated."). We agree with *Kouba*'s early warning, and with the observations of our sister circuits.

The EPA's fourth exception allows employers to justify wage disparities between employees of the opposite sex based on any job-related factor other than sex. Because prior pay may carry with it the effects of sex-based pay discrimination, and because sex-based pay discrimination was the precise target of the EPA, an employer may not rely on prior pay to meet its burden of showing that sex played no part in its pay decision. For purposes of the fourth exception, we conclude that the wage associated with an employee's prior job does not qualify as a factor other than sex that can defeat a prima facie EPA claim.

**E.**

Having reconsidered *Kouba*, we are persuaded that it must be overruled. *Kouba* recognized that allowing prior pay to serve as an affirmative defense to an EPA claim could perpetuate wage discrimination, but it ultimately held that the EPA "does not impose a strict prohibition against the use of prior salary," so long as employers considered prior pay reasonably to advance an acceptable business reason. 691 F.2d at 876–77, 878. *Kouba*'s holding that prior pay in

combination with other factors may serve as an affirmative defense is inconsistent with the EPA's text, purpose, and burden-shifting framework for the same reasons the use of prior pay alone is inconsistent with the EPA's text, purpose, and burden-shifting framework. At best, requiring the use of other factors in combination with prior pay waters down the influence of whatever historic wage discrimination remains.

*Kouba*'s consideration of whether the employer used prior pay reasonably is also in tension with the EPA's strict liability framework, in which intent to discriminate plays no role. 691 F.2d at 876. As the EEOC's brief diplomatically puts it, our case law "could be read to blur the line" between the *McDonnell Douglas* three-step test for Title VII claims and the two-step test applicable to the EPA. *See Kouba*, 691 F.2d at 876, 878; *Maxwell*, 803 F.2d at 446; *Stanley*, 178 F.3d at 1076. Having recognized these errors, we have an obligation to correct our case law.

Finally, *Kouba*'s reliance on "business reasons" and "business policy," 691 F.2d at 876, provides little guidance to district courts, and cannot be squared with the Supreme Court's rejection of the market force theory. *See Corning Glass*, 417 U.S. at 205. "Business reasons" is a category so capacious that it can accommodate factors entirely unrelated to the work employees actually perform. The phrase sweeps in what *Corning Glass* described as business decisions that "may be understandable as a matter of economics," but which nonetheless "became illegal once Congress enacted into law the principle of equal pay for equal work." *Id.* For these reasons, we narrow our definition of the scope of the fourth exception to job-related factors other than sex and clarify that

prior pay, alone or in combination with other factors, is not one of them.[13]

Despite our concurring colleagues' agreement that prior pay alone cannot serve as an affirmative defense to a prima facie EPA claim, they abruptly shift gears when it comes to consideration of prior pay in combination with other factors. For the concurring members of our panel, prior pay—a factor they agree risks perpetuating baked-in sex discrimination—becomes palatable if it is considered along with other factors. Yet they never explain why this is so.

Some case law from other circuits suggests that prior pay may serve as an affirmative defense if it is considered in combination with other factors, but these cases uniformly rely on those other factors to excuse wage differentials. *See, e.g.*, *Irby*, 44 F.3d at 955, 957 (allowing "prior salary *and* experience" as an affirmative defense, but relying on the co-employee's "[u]nique, long-term experience as an investigator" to justify a pay difference under the EPA's "any other factor other than sex" exception); *Balmer*, 423 F.3d at 612–13 (allowing consideration of prior pay along with prior relevant work experience because "[a] wage differential based on education or experience is a factor other than sex for purposes of the Equal Pay Act" and "*most importantly*, the

---

[13] Some circuits have nominally adopted *Kouba*'s "business-related" rule, but even these circuits clearly examine the specific requirements of the job at issue. *See Aldrich*, 963 F.2d at 525 (explaining that the fourth affirmative defense imposes a "job-relatedness requirement" and that employers must prove that the pay differential is "rooted in legitimate business-related differences in work responsibilities and qualifications *for the particular positions at issue*" (emphasis added)); *see also Md. Ins. Admin.*, 879 F.3d at 123 (following *Aldrich*); *Riser*, 776 F.3d at 1198 (same).

ultimate decision maker at [the employer] determined that [the male employee] had greater relevant industry experience than Plaintiff." (emphasis added)); *see also Riser*, 776 F.3d at 1199 (approving an EPA defense based on an employee's prior salary, qualifications, *and* experience). None of these cases suggests that the use of prior pay is acceptable, so long as it is sufficiently diluted by other considerations.

Citing these cases, our concurring colleagues insist that prior pay is a valid affirmative defense if considered with other factors. But they overlook that using the proxy of prior pay, rather than relying on the factors actually related to the job being performed, adds nothing to the employer's defense because any legitimate job-related factors can themselves defeat a prima facie EPA showing. Nor is it correct to say that we deepen a circuit split. Only the Seventh Circuit has conclusively relied on prior pay as an affirmative defense to a prima facie EPA claim.[14]  *Wernsing*, 427 F.3d at 469. Following *Kouba*, the Sixth, Tenth, and Eleventh Circuits articulated rules purporting to allow prior pay to serve as an affirmative defense if considered with other factors, but they have substantively relied on the "other factors" to justify the challenged pay differentials.[15]

---

[14] The Fourth Circuit has suggested it may share this view, but only in dicta. *See Spencer v. Virginia State Univ.*, 919 F.3d 199, 206 (4th Cir. 2019).

[15] Our concurring colleagues imply that the EEOC advocates a rule that allows consideration of prior pay along with other factors. They rely on a statement from the EEOC Compliance Manual that prior pay may succeed as an affirmative defense when "other factors [are] also considered." *See* U.S. Equal Emp't Opportunity Comm'n, Compliance Manual § 10-IV(F)(2)(g) (2000). This merely reflects the EEOC's understanding of current case law. *See id.* § 10-II. Setting aside the

Our holding prevents employers from relying on prior pay to defeat EPA claims, but the EPA does not prevent employers from considering prior pay for other purposes. For example, it is not unusual for employers and prospective employees to discuss prior pay in the course of negotiating job offers, and the EPA does not prohibit this practice.[16] Certainly, our opinion does not prohibit this practice. But whatever factors an employer considers, if called upon to defend against a prima facie showing of sex-based wage discrimination, the employer must demonstrate that any wage differential was in fact justified by job-related factors other than sex. Prior pay, alone or in combination with other factors, cannot serve as a defense.

The concurring members of our panel repeatedly incant that our opinion prohibits any consideration of prior pay. But this is just not so. The disconnect appears to be the result of overlooking the difference between *considering prior pay when setting a salary*—which the EPA does not address, much less prohibit—and *relying on prior pay to defend an EPA violation*. Our statement that "prior pay, alone or in combination with other factors, is not [a job-related factor]"

_____

Supreme Court's direction that the Compliance Manual is not entitled to deference, *Ledbetter*, 550 U.S. at 642 n.11, the Compliance Manual's sole support for this statement is its citation to our opinion in *Kouba* and the Eleventh Circuit's decision in *Irby*. EEOC Compliance Manual § 10-IV(F)(2)(g). But the EEOC urged us to take this case en banc to reconsider *Kouba*, which we did, and for the reasons we explain here, we conclude that neither *Kouba* nor *Irby* can be reconciled with Supreme Court precedent.

[16] In this way, the EPA is less stringent than California's pay privacy law, which does not allow employers to inquire about prior pay. *See* Cal. Lab. Code § 432.3.

addresses the use of prior pay as an affirmative defense, not the consideration of prior pay to make a competitive job offer, to negotiate higher pay, or to set a salary. And there is no basis for concern that our opinion will prevent employers from considering prior pay when employees disclose it.

We recognize there may seem to be tension between allowing employers to consider prior salary in setting wages on the one hand, and requiring that they defend an EPA claim without relying on prior pay on the other. But this is inherent in the terms of the EPA itself. The statute places no limit on the factors an employer may consider in setting employees' wages, but it places on employers the burden of demonstrating that sex played no role in causing wage differentials. To meet this burden, employers may rely on any bona fide job-related factor other than sex. But relying on the heuristic of prior pay, rather than the actual factors associated with employees' current work, risks perpetuating historic sex discrimination.

## F.

Applying the rule that only job-related factors qualify under the EPA's fourth affirmative defense and that prior pay is not one of them, resolution of Rizo's case is straightforward. The district court ruled that Rizo satisfied her prima facie burden. Fresno County relied on Rizo's prior pay to justify paying her less than male colleagues who performed the same work. For the reasons we have explained, Rizo's prior wages do not qualify as "any other factor other than sex," and the County cannot use this factor to defeat Rizo's prima facie case. The County cites no other reason for paying Rizo less. We therefore affirm the district court's order denying Fresno County's motion for summary

judgment and remand for further proceedings consistent with this opinion.

**AFFIRMED.**

---

McKEOWN, Circuit Judge, with whom Judge TALLMAN and Judge MURGUIA, Circuit Judges, join, concurring:

The majority embraces a rule not adopted by any other circuit—prior salary may never be used, even in combination with other factors, as a defense under the Equal Pay Act. The circuits that have considered this important issue have either outright rejected the majority's approach or declined to adopt it. I see no reason to deepen the circuit split. What's more, the majority's position is at odds with the view of the Equal Employment Opportunity Commission ("EEOC"), the agency charged with administering the Act. And, perhaps most troubling, the majority fails to account for the realities of today's dynamic workforce, choosing instead to view the workplace in a vacuum. In doing so, it betrays the promise of equal pay for equal work and disadvantages workers regardless of gender identity.

I agree with much of the majority opinion—particularly the observation that past salary can reflect historical sex discrimination. For decade after decade, gender discrimination has been baked into our pay scales, with the result that women still earn only 80 percent of what men make. As the majority notes, this pay gap is "even more pronounced among women of color." Unfortunately, women employed in certain sectors face an even larger gap. This disparity is exacerbated when a woman is paid less than a

man for a comparable job solely because she earned less at her last job. The Equal Pay Act prohibits precisely this kind of "piling on," whereby women can never overcome the historical inequality.

I welcome the day when this would no longer be so because women have achieved parity in the workplace. But the majority goes too far in holding that any consideration of prior pay is "inconsistent" with the Equal Pay Act, even when it is assessed alongside other job-related factors such as experience, education, past performance, and training. This declaration may in fact disadvantage job applicants, whether female, male, or non-binary. For this reason, I concur in the result but not in the majority's rationale. In my view, prior salary alone is not a defense to unequal pay for equal work. If an employer's only justification for paying men and women unequally is that the men had higher prior salaries, odds are that the one-and-only "factor" causing the difference is sex. However, employers do not necessarily violate the Equal Pay Act when they consider prior salary among other factors when setting initial wages. As always, the employer has the burden to show that any pay differential is based on a valid factor other than sex.

To be sure, the majority correctly decides the only issue squarely before the court: whether the Fresno County Office of Education was permitted to base Aileen Rizo's starting salary solely on her prior salary. The answer is no. But regrettably, the majority goes further and effectively bars any consideration of prior salary in setting a salary. Not only does Rizo's case not present this issue, but this approach is unsupported by the statute, is unrealistic, and may work to applicants' disadvantage.

Rizo's case is an easy one. After she was hired as a math consultant, she learned that male colleagues in the same job were being hired at a higher salary. The only rationale offered by the County was that Rizo's salary was lower at a prior job. In effect, the County "was still taking advantage of the availability of female labor to fill its [position] at a differentially low wage rate not justified by any factor other than sex"—a practice long held unlawful. *Corning Glass Works v. Brennan*, 417 U.S. 188, 208 (1974); *see Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1570 (11th Cir. 1988) ("[T]he argument that supply and demand dictates that women *qua* women may be paid less is exactly the kind of evil that the [Equal Pay] Act was designed to eliminate, and has been rejected."); *Drum v. Leeson Elec. Corp.*, 565 F.3d 1071, 1073 (8th Cir. 2009) (It is "prohibited" to rely on the "'market force theory' to justify lower wages for female employees simply because the market might bear such wages").

This scenario provides a textbook violation of the "equal pay for equal work" mantra of the Equal Pay Act. Prior salary level created the only differential between Rizo and her male colleagues. In setting her initial wage, the County did not, for example, consider Rizo's two advanced degrees or her prior experience. This historical imbalance entrenched unequal pay for equal work based on sex—end of story. The County cannot mount a defense on past salary alone.

Congress enacted the Equal Pay Act to root out historical sex discrimination, declaring it the "policy" of the Act "to correct the conditions" of "wage differentials based on sex." Pub. L. No. 88-38, 77 Stat. 56 (1963). At the signing ceremony, President John F. Kennedy called the Act "a first step" in "achiev[ing] full equality of economic

opportunity—for the average woman worker earns only 60 percent of the average wage for men." President John F. Kennedy, Remarks Upon Signing the Equal Pay Act (June 10, 1963), http://www.presidency.ucsb.edu/ws/?pid=9267. The unqualified goal of the statute was to "eliminate wage discrimination based upon sex." H.R. Rep. No. 88-309, at 1 (1963). Sadly, that gap remains today. *See* Nat'l P'ship For Women & Families, America's Women And The Wage Gap 1 (2017), https://goo.gl/SLEcd8.

Given the stated goal of the Equal Pay Act to erase the gender wage gap, it beggars belief that Congress intended for historical pay discrepancies like Rizo's to justify pay inequity. *See Corning*, 417 U.S. at 195 ("Congress' purpose in enacting the Equal Pay Act was to remedy . . . [an] endemic problem of employment discrimination . . . based on an ancient but outmoded belief that a man . . . should be paid more than a woman even though his duties are the same."). Congress recently noted that the existence of gender-based pay disparities "has been spread and perpetuated" since the passage of the Act and "many women continue to earn significantly lower than men for equal work." H.R. Rep. No. 110-783, at 1–2 (2008). "In many instances, the pay disparities can only be due to continued intentional discrimination *or the lingering effects of past discrimination.*" *Id.* (emphasis added). Because past pay can reflect the very discrimination Congress sought to eradicate in the statute, allowing employers to defend unequal pay for equal work on that basis alone risks perpetuating unlawful inequity. *C.f. Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 647 (2007) (Ginsburg, J., dissenting), *dissenting position adopted by legislative action* (Jan. 29, 2009) ("Paychecks perpetuating past discrimination . . . are actionable . . . because they discriminate anew each time they issue."). That danger is

best avoided by construing the Equal Pay Act "to fulfill the underlying purposes which Congress sought to achieve" and rejecting prior salary as its own "factor other than sex" defense. *Corning*, 417 U.S. at 208.

Yet I differ with the majority in one key respect. Merely because prior pay is unavailable as a standalone defense does not mean that employers should be barred from using past pay as a factor in setting an initial salary. Contrary to the majority's assertion, it is wholly consistent to forbid employers from baldly asserting prior salary as a defense—without determining whether it accurately measures experience, education, training or other lawful factors not based on sex—but to permit consideration of prior salary along with those valid factors. Using prior salary along with valid job-related factors such as education, past performance and training may provide a lawful benchmark for starting salary in appropriate cases. But "wage differentials based *solely* on the sex of the employee are an unfair labor standard." H.R. Rep. No. 88-309, at 3 (emphasis added). This interpretation of the statute still places the burden on the employer to justify that salary is determined on the basis of "any other factor other than sex." 29 U.S.C. § 206(d)(1). And, as Congress observed, "there are many factors which may be used to measure the relationships between jobs and which establish a valid basis for a difference in pay." H.R. Rep. No. 88-309, at 3 (1963).

My views align with those of the EEOC and most of our sister circuits that have addressed the question. The EEOC's Compliance Manual states:

> [A]n employer may consider prior salary as
> part of a mix of factors—as, for example,

> where the employer also considers education
> and experience and concludes that the
> employee's prior salary accurately reflects
> ability, based on job-related qualifications.
> But because "prior salaries of job candidates
> can reflect sex-based compensation
> discrimination," "[p]rior salary cannot, by
> itself, justify a compensation disparity."

EEOC Compliance Manual, Compensation Discrimination
§ 10-IV.F.2.g (Dec. 5, 2000), *available at*
https://www.eeoc.gov/policy/docs/compensation.html. The
EEOC's pragmatic approach accounts for realities in the
workplace while preserving the promise of equal pay for
equal work. Because many job-related factors, such as
education and experience, are not gender-based and
"applicants rarely have 'identical education and
experience'… [i]f an employer sincerely weighs such factors
with prior salary, there is no reason to think the resulting pay
decisions would perpetuate the gender pay gap."

The Tenth and Eleventh Circuits reached the same
conclusion, holding that prior pay *alone* cannot justify a
compensation disparity. *See Riser v. QEP Energy*, 776 F.3d
1191, 1199 (10th Cir. 2015) (an employer may decide to pay
an elevated salary to an applicant who rejects a lower offer,
but the Act "precludes an employer from relying solely upon
a prior salary to justify pay disparity"); *Irby v. Bittick*,
44 F.3d 949, 955 (11th Cir. 1995) ("This court has not held
that prior salary can never be used by an employer to
establish pay, just that such a justification cannot solely carry
the affirmative defense."). The Eighth Circuit adopted a
similar approach, permitting the use of prior salary as a
defense, but "carefully examin[ing] the record to ensure that

an employer does not rely on the prohibited 'market force theory' to justify lower wages" for women based solely on sex. *Drum*, 565 F.3d at 1073. The Second Circuit likewise allows the prior-salary defense, but places the burden on an employer to prove that a "bona fide business-related reason exists" for a wage differential—*i.e.*, one that is "rooted in legitimate business-related differences in work responsibilities and qualifications for the particular positions at issue." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 525–26 (1992). The more nuanced holding adopted by our sister circuits better accords with common sense and the statutory text. The Equal Pay Act provides an affirmative defense for "*any* other factor other than sex." 29 U.S.C. § 206(d)(1) (emphasis added).

Meanwhile, the Fourth and Seventh Circuits have veered off course, holding that prior salary is *always* a "factor other than sex." *See Spencer v. Virginia State Univ.*, 919 F.3d 199, 206 (4th Cir. 2019); *Wernsing v. Dep't of Human Servs., State of Ill.*, 427 F.3d 466, 468–70 (7th Cir. 2005). But this conclusion—that a "factor other than sex" need not be "related to the requirements of the particular position" or even "business-related"—contravenes the Act's purpose of ensuring women and men earn equal pay for equal work. *Wernsing*, 427 F.3d. at 470. After all, inherent in the Act is an understanding that compensation should mirror one's "skill, effort, and responsibility." *See Corning*, 417 U.S. at 195 (quoting 29 U.S.C. § 206(d)(1)); *see also Glenn*, 841 F.2d at 1571. Because we know that historical sex discrimination persists, it cannot be that prior salary always reflects a factor other than sex. I fear, however, that the majority makes the same categorical error as the Fourth and Seventh Circuits, but in the opposite direction: it announces that prior salary is *never* a "factor other than sex." By

forbidding consideration of prior salary altogether, the majority extends the scope of the statute and risks imposing Equal Pay Act liability on employers for using prior salary as *any* part of the calculus in making wage-setting decisions. That, too, is a drastic holding, particularly because companies and institutions often consider prior salary in making offers to lure away top talent from their competitors or to attract employees with specific skills. In unpacking what goes into the calculation, it may well be that past salary accurately gauges a prospective employee's "skill, effort, and responsibility," as the Equal Pay Act envisions—in addition to her education, training, and past performance—and a new employer wants to exceed that benchmark.

The Equal Pay Act should not be an impediment for employees seeking a brighter future and a higher salary at a new job. *See generally* Orly Lobel, Talent Wants to Be Free 49–75 (Yale Univ. Press 2013) (concluding that employee mobility between competitors promotes innovation and job growth); Cade Metz, *Tech Giants Are Paying Huge Salaries for Scarce A.I. Talent*, N.Y. Times, Oct. 23, 2017, at B1 (noting that employers pay a premium to hire top engineering talent).

On that front, states and cities have begun passing statutes[1] that prohibit employers from asking employees

---

[1] *See, e.g.*, Cal. Labor Code § 432.3; Or. Rev. Stat. Ann. § 659A.357; San Francisco Ordinance 142-17 (2017); Del. Code Ann. tit. 19, § 709B (2017); Mass. Acts ch. 177 (2016); N.Y.C. Local Law No. 67 (2017).

about their prior salaries.[2]   These laws represent creative efforts to narrow the gender wage gap.  But they also provide important exemptions for employees who wish to disclose prior salaries as part of a salary negotiation.  *See, e.g.*, Cal. Labor Code § 432.3(g); Del. Code Ann. Tit. 19, § 709B(d).

The majority's holding may reach beyond these state statutes by making it a violation of federal antidiscrimination law to consider prior salary, even when an employee chooses to provide this information as a bargaining chip for higher wages.   I am concerned about chilling such voluntary discussions.  The majority handcuffs employers from relying on past salary information—but in doing so, equally shackles women from using prior salary in their favor.  Indeed, the result may disadvantage rather than advantage women.

To avoid these consequences, the majority endeavors to limit its decision by announcing that neither its holding nor the Equal Pay Act prevents employers from "consider[ing] prior pay for other purposes."   But the majority's vague disclaimer hardly dilutes the practical effects of the holding's broad sweep.  In the same breath, the majority states that its holding both "prevents employers from relying on prior pay to defeat EPA claims" and that it does not reach the "discuss[ion of] prior pay in the course of negotiating job offers."  But an Equal Pay Act claim could include violations arising from negotiated salaries.  And, because the majority bars the use of prior salary to set initial wages under the Act,

---

[2] A bill was introduced in Congress to enact a federal prohibition on "requiring" or "requesting" that prospective employees disclose previous wages or salary history.  *See* H.R. 2418, 115th Cong. (2017).  Like its state counterparts, this bill does not seek to outlaw salary negotiations initiated by an employee.

it has left little daylight for arguing that negotiated starting salaries should be treated differently. In the real world, an employer might consider prior salary—disclosed voluntarily by an employee during negotiations—to offer a pay bump above that prior salary. Permitting prior pay in setting salary but not as an affirmative defense to the Equal Pay Act results in an indefensible contradiction. The "tension" highlighted by the majority is precisely the reason that prior pay cannot be relegated to the dust bin.

The majority states that other circuits merely "suggest[] that prior pay may serve as an affirmative defense if it is considered in combination with other factors." But our sister circuits do much more. They affirmatively permit the use of prior salary in wage setting so long as it is considered in tandem with a permissible job-related factor, a far cry from concluding that watered down discrimination is acceptable. *See Irby*, 44 F.3d at 954 ("This court has not held that prior salary can never be used by an employer to establish pay, just that such a justification cannot *solely* carry the affirmative defense.") (emphasis added); *Riser*, 776 F.3d at 1198–99 (holding that the EPA precludes an employer from relying solely upon a prior salary for justification of a pay disparity). The majority also avoids grappling with the EEOC's guidance, which permits employers to consider prior salary, so long as it is considered as part of a mix of permissible factors such as education or experience.

I agree with the majority that the three-step *McDonnell Douglas* test does not apply to Equal Pay Act claims. However, neither *Corning* nor the facts of this case compel the majority to go so far as to conclude that employers may not rely on prior pay in combination with other factors as an affirmative defense.

The majority's rule does not just function as a one-way ratchet to protect women from discrimination. Instead, based on a myopic view of the workplace, it creates a regime that prevents all employees from seeking fair compensation, regardless of gender. This is particularly true when an employee's total salary includes incentive, performance, or commission-based pay. Imagine a stockbroker who receives 50 percent of his salary as a bonus for stellar performance, or a manager who, over five years, receives periodic raises based on her extraordinary contributions and performance. In both situations, past pay serves as a surrogate for achievement and helps the employees quantify their worth to potential employers. Excluding reliance on salary when it is considered with other job-related factors makes no sense.

The majority recognizes that legitimate, job-related factors such as a prospective employee's "education, skills, or experience" operate as affirmative defenses. But the majority nonetheless renders those valid, job-related factors nugatory when an employer also considers prior salary. That is a puzzling outcome that does not square with the statute, common sense, the contemporary workplace, the EEOC, or other circuits.

For these reasons, I concur only in the result.

---

CALLAHAN, Circuit Judge, with whom TALLMAN and BEA, Circuit Judges, join, concurring:

We all agree that men and women should receive equal pay for equal work. Indeed, we agree that the purpose of the Equal Pay Act of 1963 was to change "should receive equal

pay" to "must receive equal pay." However, I write separately because in holding that "wages associated with an employee's prior job" can never be considered as a factor in determining pay under 29 U.S.C. § 206(d)(1)(iv), the majority fails to appreciate Supreme Court precedent and creates an amorphous and unnecessary new standard for interpreting that subsection, which ignores the realities and dynamic nature of business. In doing so, the majority may hinder rather than promote equal pay for equal work.

# I

As required by the Equal Pay Act, Rizo made a prima facie case of pay discrimination by showing that (1) she performed substantially equal work to that of her male colleagues; (2) the work conditions were basically the same; and (3) the male employees were paid more. *See Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015).

The County does not contest the prima facie case but argues that Rizo's salary was exempt from Equal Pay Act coverage under the fourth exception in 29 U.S.C. § 206(d)(1). Subsection (d)(1) reads:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill,

effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

We agree that this suit turns on our interpretation of the fourth exception in 29 U.S.C. § 206(d)(1): "a differential based on any other factor other than sex."

## II

"The Equal Pay Act is broadly remedial and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve." *Corning Glass Works v. Brennan*, 417 U.S. 188, 208 (1974). The majority struggles mightily and unnecessarily to couple the fourth exception—despite its clear language—so closely with the other three exceptions that it loses independent meaning.

The majority suggests that the first three exceptions are all "job-related." This is not an unreasonable observation, but it does not support creating a definition of "job-related" that includes "a seniority system" but excludes "prior salary." Indeed, the sole purpose of the majority's parsing of the statute appears to be to exclude "prior salary" from its common sense inclusion in subsection (iv)—"a differential based on any other factor other than sex."

In its approach, the majority conveniently overlooks the differences within the three specific exceptions. While merit

systems and measuring earnings by quantity and quality of production are specifically job-related, that is not true of seniority systems, which are often unrelated to performance. Indeed, at the time of the passage of the Equal Pay Act, if not today, seniority systems accounted for a fair amount of pay inequality.[1]

The majority's insistence that the fourth exception is limited to its narrow definition of "job-related" is therefore flawed because the term "job-related" is a poor descriptor of the prior three exceptions. And the majority's reliance on *noscitur a sociis* and *ejusdem generis* to define the fourth exception as encompassing only "job-related" factors is also incorrect. The Supreme Court has called the fourth exception a "general catchall provision," *Corning Glass*, 417 U.S. at 196, that "was designed differently, to confine the application of the Act to wage differentials attributable to sex discrimination," *Washington County v. Gunther*, 452 U.S. 161, 170 (1981). The canons of statutory interpretation that the majority employs are of no use where a catchall provision is meant to contrast with specific exceptions, not reflect them. The *Gunther* Court explained that Equal Pay Act litigation "has been structured to permit employers to defend against charges of discrimination where their pay differentials are based on a bona fide use of 'other factors other than sex.'" *Id*. The Court cautioned that courts and administrative agencies "were not permitted to substitute their judgment for

---

[1] For example, one-quarter of the complaints filed in the year after the passage of the Equal Pay Act concerned complaints by women who were excluded from jobs because of seniority rules or because men were preferred over women after layoffs. Vicki Lens, *Supreme Court Narratives on Equality and Gender Discrimination in Employment: 1971–2002*, 10 Cardozo Women's L.J. 501, 507 (2004).

the judgment of the employer . . . so long as it does not discriminate on the basis of sex." *Id*. at 171. Thus, the standard is not whether a factor is "job-related," but whether regardless of its "job-relatedness," the factor promotes or perpetuates gender discrimination.

This conclusion is further supported by a footnote in *Gunther*, which states:

> The legislative history of the Equal Pay Act was examined by this Court in *Corning Glass Works v. Brennan*, 417 U.S. 188, 198–201 (1974). The Court observed that earlier versions of the Equal Pay bill were amended to define equal work and to add the fourth affirmative defense because of a concern that bona fide job-evaluation systems used by American businesses would otherwise be disrupted. *Id.*, at 199–201. This concern is evident in the remarks of many legislators. Representative Griffin, for example, explained that the fourth affirmative defense is a "broad principle," which "makes clear and explicitly states that a differential based on any factor or factors other than sex would not violate this legislation." 109 Cong. Rec. 9203 (1963).

*Id*. at 170 n.11 (parallel citations omitted).

### III

I agree that, based on the history of pay discrimination and the broad purpose of the Equal Pay Act, prior salary by itself does not qualify as a "factor other than sex." As the

Eleventh Circuit has noted, "if prior salary alone were a justification, the exception would swallow up the rule and inequality in pay among genders would be perpetuated." *Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995). However, the Eleventh Circuit continued:

> an Equal Pay Act defendant may successfully raise the affirmative defense of "any other factor other than sex" if he proves that he relied on prior salary *and* experience in setting a "new" employee's salary. While an employer may not overcome the burden of proof on the affirmative defense of relying on "any other factor other than sex" by resting on prior pay alone, as the district court correctly found, there is no prohibition on utilizing prior pay as part of a mixed-motive, such as prior pay *and* more experience. This court has not held that prior salary can never be used by an employer to establish pay, just that such a justification cannot solely carry the affirmative defense.

*Id*.

Indeed, our Court has previously suggested that prior pay may be considered among "other available predictors of the new employee's performance." *Kouba v. Allstate Ins. Co.*, 691 F.2d 873, 878 (9th Cir. 1982). And there is general agreement in our sister circuits that there is "no prohibition on utilizing prior pay as part of a mixed-motive." *Irby*, 44 F.3d at 955. The Tenth Circuit has held that "an individual's former salary can be considered in determining whether pay disparity is based on a factor other than sex," but

that "the EPA 'precludes an employer from relying solely upon a prior salary to justify pay disparity.'" *Riser*, 776 F.3d at 1199 (citing *Angove v. Williams–Sonoma, Inc.*, 70 Fed. App'x. 500, 508 (10th Cir. 2003) (unpublished)). The Sixth Circuit is basically in agreement. *See EEOC v. J.C. Penney Co. Inc.*, 843 F.2d 249, 253 (6th Cir. 1988) (holding that "the legitimate business reason standard is the appropriate benchmark against which to measure the 'factor other than sex' defense"). The Fourth, Seventh, and Eighth Circuits prefer even broader definitions for "factor other than sex." *See Spencer v. Virginia State University*, 919 F.3d 199, 206–07 (4th Cir. 2019) (concluding that a program whereby faculty are paid 9/12ths of their previous administrator salary provided a "non-sex-based explanation for the pay disparity"); *Covington v. S. Ill. Univ.*, 816 F.2d 317, 321–22 (7th Cir. 1987) (holding that the EPA does not preclude "an employer from carrying out a policy which, although not based on employee performance, has in no way been shown to undermine the goals of the EPA"); *Taylor v. White*, 321 F.3d 710, 720 (8th Cir. 2003) (stating that "a case-by-case analysis of reliance on prior salary or salary retention policies with careful attention to alleged gender-based practices preserves the business freedoms Congress intended to protect when it adopted the catch-all 'factor other than sex' affirmative defense").

Contrary to the majority's suggestion, the Second Circuit has not adopted its narrow definition of "job-related." In *Aldrich v. Randolph Central School District*, 963 F.2d 520, 525 (2d Cir. 1992), the Second Circuit did state that "[w]ithout a job-relatedness requirement, the factor-other-than-sex defense would provide a gaping loophole in the statute through which many pretexts for discrimination would be sanctioned," but it further held that "an employer bears the

burden of proving that a bona fide business-related reason exists for using the gender-neutral factor that results in a wage differential in order to establish the factor-other-than-sex defense." *Id.* at 526.  In *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1312 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998), the Second Circuit, addressing a claim that higher salary resulted from a male employee's over ten years of experience, stated that while the experience might explain the discrepancy, the employer "has the burden of persuasion to show both that it based [the male employee's] higher salary on this factor and that experience is a job-related qualification for the position in question."  *Id*.  In holding that the employer has the burden, the court implicitly recognized that prior salary can be job related and thus can come within the fourth exception. *See also Belfi v. Prendergast*, 191 F.3d 129, 136 (2d Cir. 1999) (noting that "to successfully establish the 'factor other than sex' defense, an employer must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential").

## IV

There is no need for the majority's approach to the fourth exception, which the Supreme Court has noted was intended to be broad.  Rather, while a pay system that relies exclusively on prior salary is conclusively presumed to be gender-based—to perpetuate gender-based inequality—a pay system that uses prior pay as one of several factors deserves to be considered on its own merits.  When a plaintiff makes a prima facie case of pay inequality based on gender, the burden of showing that the difference is not based on gender shifts to the employer.  In other words, the prima facie case

creates a presumption that the pay inequality arising from the employer's pay system is gender-based and hence is not a "factor other than sex." In *Corning Glass*, the Supreme Court explained that the Equal Pay Act's

> structure and history also suggest that once the Secretary has carried his burden of showing that the employer pays workers of one sex more than workers of the opposite sex for equal work, the burden shifts to the employer to show that the differential is justified under one of the Act's four exceptions.

*Corning Glass*, 417 U.S. at 196; *see also Maxwell v. City of Tucson*, 803 F.2d 444, 445–46 (9th Cir. 1986) (stating that once the plaintiff establishes a prima facie case, "the burden of persuasion shifts to the employer to show that the wage disparity is permitted by one of the four statutory exceptions to the Equal Pay Act").

There is no need or justification for holding that an employer could, as a matter of law, justify a differential in salary under one of the first three exceptions, but not the fourth exception. Accordingly, I agree with our sister circuits, that when salary is established based on a multi-factor salary system that includes prior salary, the presumption that the system is based on gender is rebuttable.[2]

---

[2] I agree with the majority that the market force theory for paying women less was discredited by the Supreme Court in *Corning Glass*, 417 U.S. at 205, and that the notion that an employer may pay women less because women allegedly cost more to employ than men was discredited in *City of Los Angeles, Department of Water & Power v. Manhart*,

Critically, as noted, the burden is on the employer to show that the use of prior salary as part of a multi-factor salary system does not reflect, perpetuate, or in any way encourage gender discrimination.

This is also the position of the EEOC, the agency charged with enforcing the EPA. In its amicus brief, the EEOC states that in its view because prior salaries "can reflect sex-based compensation discrimination," a prior salary "cannot by itself justify a compensation disparity," but "an employer may consider prior salary as part of a mix of factors."[3] This approach to a multi-factor formula for pay accords with the purpose of the Equal Pay Act and the Supreme Court's approach to the Equal Pay Act, as well as a common sense reading of its language. To impose obligations on employers that conflict with guidance from the agency administering the statute, as the majority opinion does, is to sow confusion.

---

435 U.S. 702 (1978).

[3] In EEOC Notice Number 915.002 (Oct. 29, 1997), "Enforcement Guidance on Sex Discrimination in the Compensation of Sports Coaches in Educational Institutions," the EEOC advised:

> Thus, if the employer asserts prior salary as a factor other than sex, evidence should be obtained as to whether the employer: 1) consulted with the employee's previous employer to determine the basis for the employee's starting and final salaries; 2) determined that the prior salary was an accurate indication of the employee's ability based on education, experience, or other relevant factors; and 3) considered the prior salary, but did not rely solely on it in setting the employee's current salary.

In reality, "prior pay" is not inherently a reflection of gender discrimination. Certainly our history of gender discrimination fully supports a presumption that the use of prior pay perpetuates discrimination. But differences in prior pay may also be based on other factors such as differences in the costs of living and in available resources in various parts of the country. Moreover, I agree with the majority in hoping that we are progressing "past the days when employers maintain separate pay scales," Majority at 25, and that it will become the norm that a prior employer will have adjusted its pay system to be gender neutral. Nonetheless, consistent with the intent of the EPA, I agree that where prior pay is the exclusive determinant of pay, the employer cannot carry its burden of showing that it is a "factor other than sex."[4] However, neither Congress's intent nor the language of the Equal Pay Act requires, or justifies, the conclusion that a pay system that includes prior pay as one of several considerations can never constitute a "factor other than sex."

---

[4] We read the EPA to place the burden on the employer to demonstrate that the pay differential falls within the fourth exception; that it is indeed not based on gender. An employer cannot meet this burden where the pay system is based solely on prior pay because by blindly accepting the prior pay, it cannot rebut the presumption that using the prior pay perpetuates the inequality of pay based on gender that the EPA seeks to correct. If, instead, as suggested by the EEOC's Notice Number 915.002, an employer not only looked to prior pay but also researched whether the applicant's prior pay reflected gender-based inequality, and made adjustments if it did, the employer would no longer be relying exclusively on prior pay. Thus, in such a situation, an employer might be able to overcome the presumption and show that its pay system was a "factor other than sex."

## V

In this case, the County based pay only on prior salary, and accordingly the district court properly denied it summary judgment. Nonetheless, the majority goes beyond what is necessary to resolve this appeal and mistakenly proclaims that prior salary can never be considered as coming within the fourth exception to the Equal Pay Act. I strongly disagree. Following the Supreme Court's guidance, I agree with our sister circuit courts, as well as the EEOC, the agency charged with enforcing the EPA, that prior pay may be a component of a pay system that comes within the fourth exception recognized in 29 U.S.C. § 206(d)(1). However, the employer has the burden of overcoming the presumption of gender discrimination and showing that its pay formula does not perpetuate or create a pay differential based on sex. We can and should require that men and women receive equal pay for equal work, but we can do so without making what is in reality a presumption an absolute rule.

For these reasons, I concur in the result, but not the majority's rationale.